WILLIAMS, BLACK & CO. v. ELIAS CARR, Adm'r R. S. Williams.

*Futures—Wagering Contract—Lex Loci Contractus—When it
Governs.*

1. Where a cotton broker, at the request of his principal, advances money
to meet losses sustained by the latter in speculations on what are known
as "future" contracts, he can recover upon a count for money paid
to the use of the principal, *unless* it should affirmatively appear that
there was no intention on one side to sell and deliver the property, nor
on the other to buy and take it, but merely that the difference should
be paid according to the fluctuations in market values. In the latter
event, the contract would be a wagering one, and void as against pub-
lic policy.

2. A lender may recover from a borrower money paid at his request in discharge of an illegal contract.

3. A contract by a resident of one state, made and to be performed in another, is governed by the *lex loci contractus* as regards its validity and construction, and not by the *lex fori* where remedy is sought for a breach.

(*Kingsbury* v. *Suit,* 66 N. C., 601, cited and approved.)

CONTROVERSY submitted without action under the Code § 315, at Fall Term, 1878, of EDGECOMBE Superior Court, to *Seymour, J.*

The case is sufficiently stated by THE CHIEF JUSTICE. His Honor gave judgment for plaintiffs and the defendant appealed.

*Messrs. Geo. Howard & J. L. Bridgers* for plaintiffs.
*Messrs. Fred. Phillips* and *Gilliam & Gatling,* for defendant.

SMITH, C. J. This is a controversy submitted without action under C. C. P. § 315 on a case agreed, the substantial facts of which are these:

The action is to recover the value of a promissory note given by the defendant's intestate and moneys paid by the plaintiffs to the use of the intestate, the aggregate amount of which, due February 24th, 1878, is $8,419.38. The consideration of the indebtedness was successive losses sustained on time contracts for the purchase of cotton, made on his behalf by the plaintiffs and paid by them at his request, and for charges and expenses incurred in the premises. The defence set up is that the contracts were in the nature of wagers or bets on the price of cotton at a given time and are illegal and void. The contracts were numerous, extending over a considerable space of time, and were similar to the one set out in the case which is as follows:

OFFICE OF JOHN T. BLACK, COTTON BROKER, WILLIAM ST.,
　　　　　　　　New York, June 6, 1877.

Sold for Messrs. Macaulay & Co.
　　　　　　　To Messrs. Williams, Black & Co.

45,000 lbs. in about one hundred square bales cotton, growth of the United States, deliverable from dock or store in said city between the first and last day of December next inclusive. The delivery within such time to be at the seller's option, in lots of not less than fifty bales upon five days' notice to the buyer, the cotton to be of any grade from strict ordinary to fair, inclusive, at the price of $11\frac{25}{100}$ cents per pound for middling, with additions or deductions for other grades, according to the rate of the cotton exchange at the time of delivery. Either party to have the right to call for a margin as the variations of the market for like deliveries may warrant, and which margin shall be kept good. This contract is made in view of and in all respects subject to the rules and conditions established by the New York cotton exchange and in full accordance with Art. XVII of the by-laws.

　　(Signed)　　　JOHN T. BLACK, Cotton Broker."

　Across the face of the paper are written these words:

"For and in consideration of one dollar to ......... in hand paid; receipt whereof is hereby acknowledged, accepted this contract with all its obligations and conditions."
　　(Signed)　　　　　MACAULAY & Co."

This contract was entered into on the cotton exchange in New York, in the regular and ordinary course of business, and in conformity to its rules and regulations, Macaulay & Co., doing business therein. The cotton exchange is an incorporated institution with authority to make rules and regulations for the government of the cotton trade in the

city not inconsistent with the laws of the state and of the United States. In November, 1877, cotton having declined, the intestate directed the plaintiffs to close out the contract, which was done by the plaintiffs executing another contract, reversing their relations and undertaking to sell and deliver cotton on the same terms to other purchasers, and assigning the first contract to them at a loss of about $150 to the intestate in making the substitution.

The intestate's interest in these transactions was known to the plaintiffs to be speculative merely, and his purchases were made in the expectation of profit from an advance in the market value of the article.

The agreement upon its face is fair and reasonable and free from any imputation or taint of illegality. It purports to contain the terms of sale by Macaulay & Co. of a specified quantity of cotton deliverable at their option during the month of December on proper notice. It contains no intimation that it can be satisfied otherwise than by a delivery at the time appointed. Looking into the pamphlet which accompanies the case and contains the charter and regulations of the cotton exchange, by which, in the absence of express provisions the contract is to be interpreted and executed, we find nothing inconsistent with entire good faith or casting suspicion upon the integrity of the transaction. Rule 8 of the association is framed to insure delivery and acceptance of the subject of traffic, and imposes upon the defaulting party a penalty of one-fourth of a cent per pound in addition to the difference between the contract price and market value of the cotton at the time when it should be delivered and received.

Now while it is true the form of the contract may cover and conceal an understanding between the parties to it, that the payment of differences in price, as the case may be, on the day of delivery shall discharge the obligation, and such understanding if found to exist would render it illegal as a

wagering contract, no such intent can be gathered from its terms, nor from the rules of the cotton exchange applicable to it. The intent must be common to both seller and buyer and not confined to one of them only, to render the transaction unlawful. There is no fact stated in the case connecting Macaulay & Co. with the intestate and his purposes and expectations in entering into his disastrous speculations in an article so uncertain and variable in market value, and none from which their knowledge of his purposes can be inferred. Both must be privy to and participate in the illegal intent to render the agreement void. *Rumsey* v. *Berry*, 65 Maine; *Greizeword* v. *Blaine*, 73 E. C. L. R., 525; *Rouske* v. *Short*, 34 E. L. & E. R., 219.

In *Bigelow* v. *Benedict*, 70 N. Y., 202, the court say: "Contracts of this kind may be mere disguises for gambling, and where an optional contract for the sale of property is made and there is no intention on one side to sell or deliver the property, or on the other to buy or take it, but merely that the difference should be paid according to the fluctuation in market values, the contract would be a wager within the statute." And again: "The form of a contract of sale may be resorted to as a mere cover for betting on the future price of the commodity agreed to be sold, and if this is the real meaning of the transaction and no *actual sale or purchase is intended*, the contract is illegal and will not be enforced. But the illegality is matter of defence, and must be established by proof and found by the jury."

In our opinion this is a correct statement of the law for determining the validity of a contract in form regular and unobjectionable. But there is another view of the case to be taken. The original transactions are closed and settled. The plaintiffs were not the vendors, but acted for the intestate in making the purchases. By the direction of the intestate they have paid his losses and exonerated him therefrom. He has recognized his liabilities and given his note

for a large part of them, and the residue has been since incurred and discharged by the plaintiffs. These constitute the claim in suit. If the original contracts could have been avoded because opposed to public policy, the intestate was not bound to set up the defence. If they were unlawful and incapable of being enforced, the payment by the intestate, or by any one at his instance and for him, was not illegal. The borrowing of money for this purpose will not invalidate the contract of lending. It is not illegal to pay a debt which could not have been recovered, nor to advance money to the debtor to be so applied.

In *Warren, Lane & Co.* v. *Hewitt*, 45 Ga., 501, this very point came before the court on a transaction very similar to the one before us, and it was held that money paid on an illegal contract negotiated by the plaintiffs is recoverable. The proper rule is there stated thus: "When the transaction has been completed and the plaintiffs seek to recover advances made by them in good faith as the agents of the defendant, which advances were authorized or ratified by him, we think they are entitled to do so." If profits resulting from the transaction had come into the hands of the agents, they would belong to the defendant; and why, reversing the case, should he not be liable to repay to the agent losses incurred and paid by the agent at his request? The illegality which vitiates must be inherent in the contract, or the taint pass into the renewal, but does not reach to the contract for borrowed money to pay the illegal debt. The principle is settled in *Kingsbury* v. *Suit*, 66 N. C., 601, and in other cases.

Our case is governed by the laws of New York, and if a contract for the future delivery of an article of trade in the very form prepared by the cotton exchange, as this is, and as we must suppose in general use is recognized as valid and enforced there, so it must be equally effectual elsewhere. It would be a singular circumstance if its rules were such that

contracts made pursuant to them could be avoided for illegality, in a state whose laws as expounded by the courts are as stringent and relentless in the condemnation of wager or other contracts contravening public policy, as those of any other. These rules and the series of minute regulations by which the cotton trade is controlled, appear obnoxious to no just criticism, but on the contrary calculated to secure the faithful execution of engagements, and the obtaining a just compensation for their breach from the party in default. We find no sufficient ground on which to declare the contracts sued on void, and the judgment is affirmed.

No error.                                    Affirmed.