EMBREY *v.* JEMISON.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF VIRGINIA.

No. 235. Argued April 3, 4, 1889. — Decided May 13, 1889.

A contract for the purchase of "future-delivery" cotton, neither the purchase or delivery of actual cotton being contemplated by the parties, but the settlement in respect to which is to be upon the basis of the mere "difference" between the contract price and the market price of said cotton futures, according to the fluctuations in the market, is a wagering contract and illegal and void, as well under the statutes of New York and Virginia, as generally in this country.

The original payee cannot maintain an action upon a note, the consideration of which is money advanced by him upon or in execution of a contract of wager, he being a party to such contract, or having directly participated in the making of it in the name, or on behalf of one of the parties.

The statute of Virginia, (Code of 1873, c. 146, § 20,) provided that when a right of action accrues "against a person who had before resided in this State, if such person shall, by departing without the same, or by absconding or concealing himself, or by any other indirect ways or means, obstruct the prosecution of such right, the time that such obstruction may have continued shall not be computed as any part of the time within which the said right might or ought to have been prosecuted;" *Held,* that this was inapplicable when the defendant, although once a resident of that State, removed therefrom before any right of action accrued against him, and before the transactions occurred out of which the plaintiff's cause of action arose.

THIS was an action of debt to recover from the plaintiff in error, who was the defendant below, the amount of four negotiable notes executed by him, January 21, 1878, and payable at the office of E. S. Jemison & Co., in the city of New York, to the order of Moody & Jemison, by whom they were indorsed, before maturity, to the plaintiff, Jemison. Each note was for the sum of $7594.15, two of them payable six months, and the remaining two twelve months, after date. There was a trial before a jury, resulting in a verdict and judgment in favor of the plaintiff for the amount demanded in the declaration. The case was brought here for review, the defendant contending that the court committed such errors of law as entitled him to a reversal of the judgment and to a new trial.

In addition to a plea of *nil debet*, the defendant filed a special plea of wager, in which it was averred, in substance, that on the last of February, or the first of March, in the year 1877, he contracted with the firm of Moody & Jemison, brokers and commission merchants of the city of New York, and members of the Cotton Exchange, to purchase for him, through the plaintiff, one of that firm, "on a margin," in said Cotton Exchange, not actual cotton, but four thousand bales of "future-delivery" cotton, for May delivery, commonly called "futures," which he did; that at the time of the purchase the defendant had in the hands of Moody & Jemison about eight thousand dollars as a margin to protect said purchase against fluctuations in the market; that in the first few days of the month of March the plaintiff, as a member of the firm of Moody & Jemison, reported that the margin was about exhausted by a decline in the market, and called for more margin, which defendant informed him he was unable to put up; that no agreement or contract was at that time, or afterwards, made with the firm of Moody & Jemison to have the said "cotton futures" carried for his account; that no report was afterwards made to him of any sale of such futures; that on the 21st day of January, 1878, in the city of New York, the plaintiff called on him for his four notes for losses which he alleged the firm of Moody & Jemison had sustained by carrying said "cotton

futures;" which notes the defendant executed, and which are the identical notes described in the declaration ; "that the purchase or delivery of actual cotton was never contemplated, either by the defendant or the said Moody & Jemison, and it was understood between them that the settlement was to be made between said parties by one party paying to the other the difference between the contract price and the market price of said cotton futures, according to the fluctuations in the market; and, therefore, the defendant says that the said contract was a wagering contract, and that it and the said four notes for the consideration aforesaid are void and of no force in law."

A demurrer to this plea was sustained, the defendant taking his exception in proper form.

On the trial of the case on the plea of *nil debet* the plaintiff, to maintain the issue upon his part, gave in evidence the four notes described in the declaration, and the defendant testified to the facts set forth in the above special plea of wager. And this was all the evidence before the jury. Thereupon the defendant asked the court to instruct the jury as follows : " If the jury shall believe from the evidence that it was not the intention of either party that a contract should be made by the plaintiff to buy and hold the bales of cotton for delivery to the defendant, but that it was the real intention and understanding of the parties that a contract should be made which should be closed at a future day, not by delivery of the cotton and payment of purchase price, but by payment of money to the one party or the other, the party to receive the same and the amount to be paid to be determined upon a basis of the difference between the agreed purchase price on the —— day of ——, 18 —, and the actual market value of the cotton on the day when the contract was to be closed, then the jury are instructed that such a contract is invalid in law and void, and that they must find for the defendant." The court refused to give this instruction, and the defendant duly excepted.

Although the notes in suit are dated at the city of New York, and were payable at the office of E. S. Jemison & Co., in that city, it does not clearly appear whether the original

contract between Embrey and the firm of Moody & Jemison, referred to in the special plea of wager, and in the above instruction, was made in Virginia, or in New York. There was, consequently, some discussion as to whether the statute of Virginia or that of New York should control the determination of the question as to the illegality of that contract. The statute of Virginia provides that " every contract, conveyance, or assurance, of which the consideration, or any part thereof, is money, property, or other thing won or bet at any game, sport, pastime or wager, or money lent or advanced at the time of any gaming, betting or wagering, to be used in being so bet or wagered, (when the person lending or advancing it knows that it is to be so used,) shall be void." Code of Va. 1873, 984, Title 43, c. 140, § 2. By the statute of New York it is provided that " all wagers, bets or stakes, made to depend upon any race, or upon any gaming by lot or chance, or upon any lot, chance, casualty, or unknown or contingent event whatever, shall be unlawful. All contracts for or on account of any money or property, or things in action, so wagered, bet, or staked, shall be void." 1 Rev. Stat. N. Y., Part I, Title 8, art. 3, § 8.

The defendant also pleaded the statute of limitations to the amended declaration ; that the cause of action did not " accrue to the said plaintiff at any time within five years next before the commencement of this suit." To this the plaintiff replied, (setting up the Code of 1873, c. 146, § 20,) " that he ought not to be barred by reason of anything by the said defendant in his said plea of the statute of limitations alleged, because he says that at the time when the said several causes of action in the declaration mentioned, and each and every of them did accrue to the said plaintiff, the said defendant had before resided in the State of Virginia, and did by departing without the same obstruct the said plaintiff in the prosecution of his said several causes of action, and of each and every of them for several, to wit, two or more years next after the same accrued as aforesaid ; and the said plaintiff says that the time that such obstruction continued is not to be computed as any part of the time within which the said several causes of action

and each and every of them ought to have been prosecuted, and that, excluding the said time that such obstruction continued, the plaintiff brought this said action within five years next after the accruing of the said several causes of action and of each and every of them."

The defendant rejoined "that the plaintiff ought not by reason of anything in his replication alleged to have and maintain his action against him, because he says that by his removal from the State of Virginia and departing without the same, as in his said replication is alleged, he did not obstruct the said plaintiff in the prosecution of his suit upon the alleged causes of action in the declaration mentioned, because he says that his removal from the State of Virginia and departing without the same was in the year 1859, a long time before any of the alleged causes of action existed or accrued to the plaintiff against this defendant, and that when said causes of action accrued to the plaintiff he was, and still considers himself, a citizen of the State of Louisiana."

Other issues were made by the pleadings, which the opinion of the court makes unimportant.

*Mr. Joseph Christian* and *Mr. James M. Matthews* for plaintiff in error.

*Mr. Henry M. Herman* for defendant in error.

I. The court below did not err in sustaining the demurrer to the defendant's amended plea of wager.

There was no error in the action of the court below striking out the plea of wager, for there is at the very threshold of this case a well-settled principle of law which excludes it from consideration entirely, viz.: that when parties, having mutual matters of account between them growing out of a contract, deliberately come together and state a balance, and the party who on such accounting is found indebted to the other, pays the debt or gives a written obligation for its payment, this settlement is so far conclusive between the parties that it cannot be re-opened or gone into either at law or equity except upon clear proof of fraud or mistake, or of an express under-

standing that certain matters were left open for settlement. *Oil Co.* v. *Van Etten,* 107 U. S. 325; *Perkins* v. *Hart,* 11 Wheat. 237; *Hager* v. *Thomson,* 1 Black, 80; *Bull* v. *Harris,* 31 Illinois, 487; *Lee* v. *Reed,* 4 Dana, 109; *Hodges* v. *Hosford,* 17 Vermont, 615; *Martin* v. *Beckwith,* 4 Wisconsin, 219; *Gibson* v. *Hanna,* 12 Missouri, 162; *Cogswell* v. *Whittlesey,* 1 Root, 384; *Sergeant* v. *Ewing,* 36 Penn. St. 156; *Nicholson* v. *Pelanne,* 14 La. Ann. 508. And when such an account is settled, the presumption is that all the previous dealings between the parties relating to the subject matter of the account are adjusted. *Bourke* v. *James,* 4 Michigan, 336; *Mills* v. *Geron,* 22 Alabama, 669.

It is a well-settled principle in the Federal courts that a party to a negotiable instrument is not a competent witness to prove any fact existing at the time of his accrediting the paper, tending to invalidate it. *Bank of the United States* v. *Dunn,* 6 Pet. 51; *Bank of the Metropolis* v. *Jones,* 8 Pet. 12; *Scott* v. *Lloyd,* 12 Pet. 145; *Henderson* v. *Anderson,* 3 How. 73; *Smyth* v. *Strader,* 4 How. 404; *Saltmarsh* v. *Tuthill,* 13 How. 229; *Sweeney* v. *Easter,* 1 Wall. 166; *Davis* v. *Brown,* 94 U. S. 423.

It has also been settled in this court that a continued recognition of a debtor's liability and his agreement to discharge it, after he has full knowledge of all the facts in relation to the matter, estop him from pleading a want of consideration or setting up fraud as a defence to an action on the promise. *Fitzpatrick* v. *Flannagan,* 106 U. S. 648; *McCreary* v. *Parsons,* 31 Kansas, 447; *Stebbins* v. *Crawford County,* 92 Penn. St. 289; *Negley* v. *Lindsay,* 67 Penn. St. 217. A negotiable note or bill of exchange is an extinguishment of a simple contract debt, the maker being liable to pay the money to a third person. 2 Bac. Abr. Debt, G. 290; *Kearslake* v. *Morgan,* 5 T. R. 513.

These promissory notes are evidence of an account stated. And after giving them, Embrey cannot go into evidence to impeach the charges in the first account, which has been settled. *Laycock* v. *Pickles,* 4 B. & S. 497; *Milward* v. *Ingram,* 2 Mod. 44.

The only statute in Virginia as to wagers, enacted in 1849, is the following: "Every contract, conveyance or assurance, of which the consideration, or any part thereof, is money, property or other thing won, or bet, at any game, sport, pastime or wager, or money lent or advanced at the time of any gaming, betting or wagering, to be used in being so bet or wagered, (when the person lending or advancing it knows that it is to be so used,) shall be void."

This statute is a penal statute, and must be strictly construed. It must be limited in its application to the object the legislature had in view, and cannot be extended to matters that did not exist when the statute was made. Penal statutes cannot be enlarged by intendment, and acts not expressly forbidden by them cannot be reached merely because they resemble the offences provided against, or are equally, or in the same way demoralizing or injurious. They cannot be made to embrace anything which was not within the intent of the legislature. *Shaw* v. *Clark*, 49 Michigan, 384; *United States* v. *Clayton*, 2 Dillon, 219; *Griffiths* v. *Sears*, 112 Penn. St. 523; *United States* v. *Morris*, 14 Pet. 464; *McCormick* v. *Nichols*, 19 Bradwell (Ill. App.) 334; *United States* v. *Wiltberger*, 5 Wheat. 76; *Reed* v. *Davis*, 8 Pick. 514; *United States* v. *Sheldon*, 2 Wheat. 119; *Sprague* v. *Birdsall*, 2 Cowen, 419; *Ferrett* v. *Atwill*, 1 Blatchford, 151; *Jenkinson* v. *Thomas*, 4 T. R. 665; *Fletcher* v. *Lord Sondes*, 3 Bing. 501; *Rex* v. *Handy*, 6 T. R. 286; *Rex* v. *Hymon*, 7 T. R. 536; *Walwin* v. *Smith*, 1 Salk. 177; *United States* v. *Ragsdale*, Hemp. 497. On this point see especially *Brown* v. *Speyers*, 20 Grattan, 296, 308, where this question is fully discussed.

Though an illegal contract will not be enforced, yet, when it has been executed by the parties, and the illegal object has been accomplished, the money or thing which was the price of it may be a legal consideration between the parties for a promise express or implied. *Planters' Bank* v. *Union Bank*, 16 Wall. 483; *Brooks* v. *Martin*, 2 Wall. 70; *Cook* v. *Sherman*, 20 Fed. Rep. 167. The transaction alleged to be illegal is completed and closed, and will not be affected by what the court is asked to do, between the parties. *McBlair* v. *Gibbes*, 17 How. 232; *Brooks* v. *Martin*, *ubi supra*.

II. The court below correctly construed the statute of limitations. The construction given by a state court to a statute of the State is received as true; and enforced in all Federal courts unless it conflicts with the Constitution or laws of the United States. *Leffingwell* v. *Warren*, 2 Black, 599. State statutes of limitation, no rule being given by Congress, form the rule of decision in United States courts and the like effect is there given as in the state courts. *McCluny* v. *Silliman*, 3 Pet. 270; *Ross* v. *Duval*, 13 Pet. 45; *Harpending* v. *Dutch Church*, 16 Pet. 455; *Moores* v. *National Bank*, 104 U. S. 625; *Henderson* v. *Griffin*, 5 Pet. 151; *Goldenberg* v. *Murphy*, 108 U. S. 162. The state statutes of limitations govern in common law cases in the Federal courts unless Congress has provided otherwise. Rev. Stat. § 721. In *Ficklin* v. *Carrington*, 31 Gratt. 224 to 227, the Court of Appeals of Virginia passed on precisely the same plea of the statute of limitations as that set up by the plaintiff in error in this case, and the opinion in that case delivered by Christian, Judge, is identical with the construction given to it by the court below, in this case.

And this is the construction placed upon similar statutes in other States and by this court. It applies when the party is without the limits of jurisdiction of the State where the action is brought. *Murray* v. *Baker*, 3 Wheat. 541; *Bank of Alexandria* v. *Dyer*, 14 Pet. 141; *Brent* v. *Tasker*, 1 Harr. & McH. 89; *Forbes* v. *Foot*, 2 McCord, 331; *S. C.* 13 Am. Dec. 732; *Denham* v. *Holeman*, 26 Georgia, 182; *S. C.* 71 Am. Dec. 198; *White* v. *Bailey*, 3 Mass. 271; *Byrne* v. *Crowninshield*, 1 Pick. 263; *Galusha* v. *Cobleigh*, 13 N. H. 79.

MR. JUSTICE HARLAN, after stating the case, delivered the opinion of the court.

Whether the validity of the original contract for the purchase of future-delivery cotton must depend upon the New York statute or upon the Virginia statute, it is not important to determine; for, if such contract, as alleged, is a wagering contract, it is void under the law of either State. The plea makes a case of money advanced by the plaintiff's firm solely for the purpose of carrying "cotton futures," for which he

or they contracted, when, according to the averments of the rejected plea, neither party contemplated the purchase or delivery in fact of cotton, and when it was understood that any settlement, in respect to such purchases, should be exclusively upon the basis of one party paying to the other only "the difference between the contract price and the market price of said cotton futures, according to the fluctuations in the market." If this be not a wagering contract, under the guise of a contract of sale, it would be difficult to imagine one that would be of that character. The mere form of the transaction is of little consequence. If it were, the statute against wagers could easily be evaded. The essential inquiry in every case is as to the necessary effect of the contract and the real intention of the parties. Mr. Benjamin, in his Treatise on Sales, (vol. 2, 717, 6th Amer. ed. by Corbin, § 828,) after stating that at common law wagers that did not violate any rule of public decency or morality, or any recognized principle of public policy, were not prohibited, says: "It has already been shown that a contract for the sale of goods to be delivered at a future day is valid, even though the seller has not the goods, nor any other means of getting them than to go into the market and buy them." "But such a contract," he proceeds to say, "is only valid where the parties really intend and agree that the goods are to be delivered to the seller, and the price to be paid by the buyer. If, under guise of such a contract, the real intent be merely to speculate in the rise or fall of prices, and the goods are not to be delivered, but one party is to pay to the other the difference between the contract price and the market price of the goods at the date fixed for executing the contract, then the whole transaction constitutes nothing more than a wager, and is null and void under the statute." The statute referred to by the author is that of 8 and 9 Vict. c. 109, § 18, which provides "that all contracts or agreements, whether by parol or in writing, by way of gaming or wagering, shall be null and void; and that no suit shall be brought or maintained in any court of law or equity for recovering any sum of money or valuable thing alleged to be won upon any wager, or which should have been deposited in the hands of any person, to abide the event on which any wager should have been made."

In *Irwin* v. *Williar*, 110 U. S. 499, 508, 510, the general subject of wagering contracts was carefully considered, and in the opinion, delivered by Mr. Justice Matthews, we expressed approval of the doctrine as announced by Mr. Benjamin, observing that generally, in this country, all such contracts are held to be illegal and void as against public policy. It was there said : "It makes no difference that a debt or wager is, made to assume the form of a contract. Gambling is none the less such because it is carried on in the form or guise of legitimate trade." Referring to the decision in *Rountree* v. *Smith*, 108 U. S. 269, it was further said: "It is certainly true that a broker might negotiate such a contract without being privy to the illegal intent of the principal parties to it which renders it void, and in such a case, being innocent of any violation of law, and not suing to enforce an unlawful contract, has a meritorious ground for the recovery of compensation for services and advances. But we are also of the opinion that when the broker is privy to the unlawful design of the parties, and brings them together for the very purpose of entering into an illegal agreement, he is *particeps criminis*, and cannot recover for services rendered or losses incurred by himself on behalf of either in forwarding the transaction." In the present case, according to the averments in the plea of wager, the plaintiff was the broker who effected the purchases of future-delivery cotton. He was privy to the unlawful design of the parties ; represented one of them in all the transactions ; and advanced the money necessary to carry, and for the express purpose of carrying, these cotton "futures" on account of the defendant. His position, therefore, was not that of a person merely advancing money to or for one of the parties to a wager, without having himself any direct connection with the making or execution of the contract of wager itself. He was, in every sense, *particeps criminis*.

In *Bigelow* v. *Benedict*, 70 N. Y. 202, 206, the Court of Appeals of New York said that "where an optional contract for the sale of property is made, and there is no intention on the one side to sell or deliver the property, or on the other to buy or take it, but merely that the difference should be paid

according to the fluctuation in market values, the contract would be a wager within the statute." In *Story* v. *Salomon*, 71 N. Y. 420, 422, which was an action upon a written contract for an option to buy or sell certain shares of stock, and the defence was that it was illegal and void under the statute of New York against gaming, the court said: "If it had been shown that neither party intended to deliver or accept the shares, but merely to pay differences according to the rise or fall of the market, the contract would have been illegal." The same principle was announced in *Kingsbury* v. *Kirwan*, 77 N. Y. 612. There are many other authorities to the same effect, but in view of our decision in *Irwin* v. *Williar*, with which we are entirely satisfied, it is not necessary to cite them.

The plaintiff relies upon *Brown* v. *Speyers*, 20 Grattan, 296, as expressing a different view of this question. But we do not so understand that case. The Supreme Court of Appeals of Virginia did not there indicate its opinion as to the validity of a contract for the purchase of "futures," the settlement in respect to which was to be upon the basis of paying simply the difference, according to the fluctuations in the market, between the contract price and the market price.

It is contended that this is not an action upon the original contract, but upon the notes executed by Embrey after the business transacted for him by Moody & Jemison was closed, and with full knowledge, upon his part, of all the facts. In such a case, it is argued, the principles announced in *Irwin* v. *Williar* cannot be applied. This argument concedes, at least for the purposes of the present case, that, as the law, for the protection of the public, and in the interest of good morals, declares a wagering contract to be void, the plaintiff could not maintain an action for the moneys advanced in execution of the original contract to carry these "futures." And yet it is insisted that he ought to have judgment on the notes in suit, although it appears they have no other consideration than the moneys so advanced. A judgment upon the notes would, in effect, be one for the amount claimed by the plaintiff, under the original contract, at the time he demanded their execution

by the defendant. Indeed, it has been held that a note could not of itself discharge the original cause of action, unless, by express or special agreement, it was received as payment. *Sheehy* v. *Mandeville*, 6 Cranch, 253, 264; *Peter* v. *Beverly*, 10 Pet. 532, 568; *The Kimball*, 3 Wall. 37, 45.

While there are authorities that seem to support the position taken by the defendant in error, we are of opinion that, upon principle, the original payee cannot maintain an action on a note the consideration of which is money advanced by him upon or in execution of a contract of wager, he being a party to that contract, or having directly participated in the making of it in the name of or on behalf of one of the parties.

In *Steers* v. *Lashley*, 6 T. R. 61, it appeared that the defendant was engaged in stock-jobbing transactions with different persons, in which one Wilson was employed as his broker, and had paid the "differences" for him. A dispute having arisen as to their amount, the matter was referred to the plaintiff and others, who awarded a certain sum as due from the defendant. For a part of that sum the broker drew a bill on the defendant, and after it had been accepted indorsed it to the plaintiff. Lord Kenyon said: "If the plaintiff had lent this money to the defendant to pay the differences, and had afterwards received the bill in question for that sum, then, according to the principle announced in *Petrie* v. *Hannay*, 3 T. R. 418, he might have recovered. But here the bill on which the action was brought was given for these very differences; and therefore Wilson himself could not have enforced payment of it. Then the security was indorsed over to the plaintiff, he knowing of the illegality of the contract between Wilson and the defendant; for he was the arbitrator to settle their accounts; and under such circumstances he cannot be permitted to recover on the bill in a court of law."

In *Amory* v. *Meryweather*, 2 B. & C. 573, 578, which was an action of debt on bond, conditioned for the payment of money by instalments, the plea in substance was that the bond was given in place of a promissory note previously executed in payment for moneys advanced by an agent of the obligor in discharge of differences arising upon contracts for

buying and selling shares in the public stocks, against the form of the statute; the plaintiff having knowledge, when he received the bond, that the note had been made by the defendant on the occasion and for the purpose stated. Abbott, C. J., after observing that there was no period of time when the plaintiff could have maintained an action upon the note, said: "We are all of opinion that as it appears upon the plea that the bond was given as a substitute for a note which was taken by the plaintiffs subject to an infirmity of title of which they had full notice before the bond was taken, the latter instrument is void." In *Fisher* v. *Bridges*, 3 El. & Bl. 642, 649, which was an action upon a covenant in a deed to pay a certain sum, and which covenant was given as security for payment of a part of the purchase money of real estate sold by the plaintiff to the defendant, to be by the latter disposed of by lottery, as the plaintiff knew, the court said: "It is clear that the covenant was given for the payment of the purchase money. It springs from and is the creature of the illegal agreement and, as the law would not enforce the original illegal contract, so neither will it allow the parties to enforce a security for the purchase money, which, by the original bargain, was tainted with illegality." See also *Fareira* v. *Gabell*, 89 Penn. St. 89; *Griffiths* v. *Stears*, 112 Penn. St. 523; *Flagg* v. *Baldwin*, 38 N. J. Eq. 218, 227; *Cunningham* v. *Bank of Augusta*, 71 Georgia, 400; *Tenney* v. *Foote*, 95 Illinois, 991; *Rudolf* v. *Winters*, 7 Nebraska, 126; *Lowry* v. *Dillman*, 59 Wisconsin, 197; *S. C.* 18 N. W. Rep. 4.

Assuming the averments of the plea of wager to be true, it is clear that the plaintiff could not recover upon the original agreement without disclosing the fact that it was one that could not be enforced or made the basis of a judgment. He cannot be permitted to withdraw attention from this feature of the transaction by the device of obtaining notes for the amount claimed under that illegal agreement; for they are not founded on any new or independent consideration, but are only written promises to pay that which the obligor had verbally agreed to pay. They do not, in any just sense, constitute a distinct or collateral contract based upon a valid considera-

tion.   Nor do they represent anything of value, in the hands
of the defendant, which, in good conscience, belongs to the
plaintiff or to his firm.   Although the burden of proof is on
the obligor to show the real consideration, the execution of the
notes could not obliterate the substantive fact that they grew
immediately out of, and are directly connected with, a wager-
ing contract.   They must, therefore, be regarded as tainted
with the illegality of that contract, the benefits of which the
plaintiff seeks to obtain by this suit.   That the defendant exe-
cuted the notes with full knowledge of all the facts is of no
moment.   The defence he makes is not allowed for his sake,
but to maintain the policy of the law.   *Coppell* v. *Hall*, 7
Wall. 542, 558.

We are of opinion that the special plea of wager presented
a good defence to the action, and ought not to have been re-
jected; also, that the instruction asked by the defendant should
have been given.

The case presents another question, which it is necessary to
consider.   The defendant in one of his pleas alleged that the
plaintiff's cause of action did not accrue within five years
next before the commencement of suit.   That is the time
within which, by the general statute of limitations of Virginia,
actions like the present one must be brought.   Virginia Code,
1873, § 8, p. 999, § 14, p. 1001.   To this plea the plaintiff re-
plied, specially, that he ought not to be bound by anything
therein alleged, because when the several causes of action in
the declaration mentioned, and each of them, accrued to him,
the defendant "had before resided in the State of Virginia,"
and by departing without the same obstructed him in the
prosecution of his several causes of action, for several, to wit,
two or more years next after the same accrued as aforesaid;
that the time such obstruction continued is not to be computed
as any part of the period within which his causes of action,
and each of them, ought to have been prosecuted; and that,
excluding such time, the plaintiff brought this action within
five years next after the accruing of his several causes of
action.   This replication was based upon the following provis-
ion in the Virginia statute of limitations: "Where any such

right as is mentioned in this chapter shall accrue against a person who had before resided in this State, if such person shall, by departing without the same, or by absconding or concealing himself, or by any other indirect ways or means, obstruct the prosecution of such right, the time that such obstruction may have continued shall not be computed as any part of the time within which the said right might or ought to have been prosecuted. But this section shall not avail against any other person than him so obstructed, notwithstanding another might have been jointly sued with him if there had been no such obstruction. And upon a contract which was made and was to be performed in another State or country, by a person who then resided therein, no action shall be maintained after the right of action thereon is barred by the laws of such State or country." Code of Virginia, 1873, 1002, c. 146, § 20. The defendant rejoined that the plaintiff ought not, by reason of anything in the replication alleged, to have and maintain his action, because by his removal from the State of Virginia and departing without the same, as alleged, he did not obstruct the plaintiff in the prosecution of his suit upon the alleged causes of action in the declaration mentioned, because such removal occurred in the year 1859, a long time before any of the alleged causes of action existed or accrued, and that, when said causes of action accrued to the plaintiff, the defendant was, and still considers himself, a citizen of the State of Louisiana.

Upon plaintiff's motion, the rejoinder of the defendant was rejected upon the ground that the above section excepted from the general act of limitation a case in which the cause of action accrued against a person previously, no matter how long before, residing in Virginia, although he may have left the State before the contract sued upon was made, and, therefore, before any cause of action thereon accrued. This construction of the statute was supposed to be required by the decision in *Ficklin's Executor* v. *Carrington*, 31 Grattan, 219. We are satisfied, upon a careful examination of that case, that it was misinterpreted by the learned district judge who presided at the trial below. That was an action of assumpsit to recover the amount of a note dated April 1, 1865. The defendant Car-

rington pleaded the statute of limitations. The plaintiff replied that he ought not to be bound by reason of anything in that plea alleged, because " on the first day of April, 1865, *when the said several promises and undertakings in the plaintiff's declaration mentioned were made and·entered into, and previous thereto,* the defendant was and had been a resident of the State of Virginia, and that *·afterwards,* to wit, on or before the 15th day of November, 1866, the said defendant departed without the State, and thereafter resided in the State of Maryland, and thereby the said defendant obstructed the said B. F. Ficklin, deceased, in his lifetime, and the plaintiff since his death, in the prosecution of his suit upon the said several promises and undertakings, until the 13th day of June, 1874, when this suit was instituted." The defendant replied, specially, that by his removal he had not obstructed, etc. The court held that the removal of the defendant, *as stated in the replication,* did, within the meaning of the statute, obstruct the bringing of the suit, and, consequently, the time subsequent to such removal was not to be counted in his favor. It also held that the above statute, although somewhat different in .its phraseology and structure from. previous enactments, made no substantial change in the previous statutes, one of which, (that of 1819, 1 Rev. Code of Virginia, 491, § 14,) provided that " if any defendant shall abscond or conceal himself, or by removal out of the country or the county where he resides *when the cause of action accrued,* or by any other indirect ways or means, defeat or obstruct the plaintiff, *then* the defendant shall not be admitted to plead the statute of limitations."

We are of opinion that the defendant's rejoinder to the plaintiff's replication to the plea of limitations was improperly rejected. It shows upon its face that the defendant's removal from Virginia occurred nearly twenty years *before the contract in question was made,* and that when the plaintiff's causes of action accrued he was not a citizen or resident of Virginia, but of Louisiana. The statutory provision upon which the plaintiff based his replication has no application to this case, if, as shown by the rejoinder, the defendant removed from Virginia before he made any contract with the plaintiff. We

cannot suppose that his removal from that State, nineteen years before that contract was made, can be regarded, under the statute of Virginia, as an ·*obstruction* to the plaintiff's prosecution of his action. The statute, so far as it relates to obstructions caused by a defendant having departed from the State, means that, being a resident of Virginia when the cause of action accrues against him, and being then suable in that State, the defendant shall not, in computing the time in which he must be sued, have the benefit of any absence caused by his departure after such right of action accrued, and before the expiration of the period limited for the bringing of suit. The plaintiff was at liberty to sue the defendant wherever he could find him. Having elected to sue him in Virginia, the courts sitting there must give effect to the limitation prescribed by her law, without any saving in favor of the plaintiff on account of the defendant's removal prior to the making of any contract whatever with the plaintiff.

The judgment is

*Reversed, with directions to grant a new trial, and for further proceedings in conformity with this opinion.*