MiNSHaul, J.
Two questions arise upon this record: The first relates to the right of the plaintiff to recover upon his petition; and the second relates to the right of the defendants to recover upon their counter-claim, although-the plaintiff may have no right -to recover upon his petition; in other words, whether the purchases and sales of grain on which the plaintiff has charged and seeks - to recover commissions, were wagers upon the future, price of the commodities bought and sold; and if so, whether under the statutes of this state the defendants may recover from him the amount claimed, as the “winner” of the money so “lost” and paid to him.
Though all the evidence is set forth in a bill of exceptions, it is not the province of this court to consider it for the purpose of determining whether the finding of the jury is right as a matter of fact. If the evidence was submitted to' the jury under proper instructions, we must accept its finding as an affirmation of the claim of the defendants, as to the character of the alleged purchases and sales of grain, on which the plaintiff seeks to recover the commissions charged in the account on which he has brought his suit.
It is well settled 'that purchases or sales of commodities of any kind for future delivery are valid, although the seller *250 may not own the commodity at the time the contract is made, and will have no other means of performing than by going into the market and making the requisite purchase when the time for delivery arrives; “but such a contract is only valid when the parties really intend and agree that the goods are to be delivered by the seller and the price to be paid by the buyer; and, if under the guise of such a contract, the real intent be merely to speculate in the rise or fall of prices, and the goods are not to be delivered, but one party is to pay to the other the difference between the contract price and the market price of the goods at the date fixed for executing the contract, then the whole transaction constitutes nothing more than a wager, and is null and void.’ Benjamin on Sales, section 542.
This is so well settled that we think it unnecessary to do more than refer to a few of the leading cases on the subject: Irwin v. Williar, 110 U. S. 499, 508, 510; Embrey v. Jemison, 131 U. S. 336, 344; Bigelow v. Benedict, 70 N. Y. 202, 206; Kahn v. Walton, 46 Ohio St. 195, 215.
In this state, by an act adopted April 25,1882, and embodied in section 6934a, Revised Statutes, such contracts are declared to be “gambling contracts,” and the parties making them liable to fine and imprisonment. Its language, applicable to this case, is, “Whoever contracts to have or give to himself or another the option to sell or buy, at a future time, any grain, or other commodity, * * * where the intent of the parties thereto is that there shall not be a delivery of the commodity sold, but only a payment of differences by the parties losing upon the rise or fall of the market,” shall be fined and imprisoned; and the contracts so made “shall be considered gambling contracts, and shall be void.” So that in this state the character of such contracts rests not merely upon judicial decision, but also upon statute; and there is no room for question as to what the law is in such cases. Many of the other states have similar statutes. And, indeed, Mr. Bishop says, “By common consent, all bargains for the purchase and sale of things — for example, stocks-and commodities — where it is the understanding of- the parties, whether expressed or not, that' the things are not to be *251 delivered, but at the agreed time the 'differences’ between their market values at the two periods are to be adjusted, and all other transactions of this nature, are illegal or against public policy, to the extent that the courts will not enforce them. These are all gambling contracts, disturbing the course of trade, and not tolerated by the law. “But,” he adds, “ a sale, in good faith, for future, actual delivery, is valid, even though, at the time of the sale, the seller has not the article in possession.” Bishop on Contracts, section 584 and notes.
And the law is the same where the suit is by one who acted as broker, to recover commissions for making the purchases or sales, where he had knowledge of the character of the transactions; for in such case he is a particeps criminis, and has no better right to recover than either of the other parties to the wager. Embrey v. Jemison, supra; Kahn v. Walton, 46 Ohio St. 195; Pearce v. Foote, 113 Ill. 228.
The evidence in the case tended to show that the transactions between the parties were simply wagers upon the course of the grain market at Chicago, although the plaintiff and his witnesses testified that the purchases and sales were real, and that deliveries would have been made if required by the customer. The defendants testified that there wás no such understanding and that the transactions were simply wagers; and, looking at the circumstances as detailed in evidence, we are unable to see; how either, party could have had any other understanding. The account attached to the petition, shows that, in the brief period of about two months 535,000 bushels of grain were bought, and that exactly the same number was sold, without a single delivery having been made. The customer was required to deposit a certain amount in the way of “ margins,” and which he was to keep good — by adding thereto, when in the course 'of the transactions he met with losses. There were, it seems, twenty-three different, but continous, deals. When a certain number of bushels of corn or wheat was bought for future delivery, on the next, or a few days thereafter, a like number was sold. If the sale was at a price higher than the purchase, commissions were deducted, and the remainder, if *252 any, went to the credit of the customer’s account; if for less than the purchase, the commissions were added to the difference, and the sum went to his debit. Or, if the first transaction was a sale, it would be closed by a purchase of a like number of bushels. And here, if the purchase was upon a rising market, the customer lost, if upon a declining market, he gained, and his account was in each case debited or credited accordingly. Now, when it is remembered, that neither of the defendants had any actual connection with the grain business, had no need to buy or sell grain of any kind — the one being a young physician and the other an assistant in the office of the city treasury, and without the means! as the plaintiff knew, of purchasing such large quantities of grain; and as no grain was in fact delivered, each transaction being settled according to the difference in the market between the time of purchasing and the time of selling, or conversely, between the time of selling and the time of purchasing, what inference should be drawn from such a state of facts other than that reached by the jury?
The court charged the jury that, “A contract for the sale of grain or other commodity, to be delivered at a future day, is not invalidated by the fact that it was to be delivered at a future day, or by the additional fact that at the time of the making of the contract the vendor had not the goods in his possession, or by the additional fact that at the time he had not entered into any contract to buy or procure the goods, nor by the further fact that at the time he had no reasonable prospect of procuring them for delivery,' according to the tenor of the .contract. In such case, if either party to the contract has the right to compel a delivery or receipt of the goods, it is a valid contract, although the parties thereto, thereafter settle and agree to close up the transactions by a payment of differences. Nor does the statute of Ohio, which has been read and commented upon in your hearing, apply to sales of grain or other goods for future delivery, where the only option is as to the time of delivery, within certain limits.” And then charged' that, “An understanding between the vendor and vendee, at the-time the contract is made, that the goods shall not be delivered or re *253 ceived, but merely to pay or receive the difference between the price agreed upon and the market price at the time agreed upon for its delivery, brings the transaction within the statue, and is void. Nor does it matter what form the parties give to their contracts,” * * * “no amount of painstaking or legal exactness,” they were told, could change the result, if the intention of the parties appeared to have been to deal in future options simply.
The case was in this regard fairly submitted to the jury,' and, we may add, that, if it was proper for us to weigh the evidence, we would not feel at all disposed to disturb the verdict. It matters little what devices may be used, ot what phraseology may be adopted for the purpose of giving to a transaction a fair mercantile appearance, if a court and jury are satisfied from all the circumstances in evidence, that it is simply a wager in disguise, there is no rule of law nor principle of reason, that can require them to .disregard', their convictions upon the subject. Persuasions so obtained are no more than the result of- the aggregate proof of the evidence, by which, in every case, the verdict of the jury should be rendered; and no amount of what they may honestly believe to be perjury, can require them to disregard conclusions forced upon their' minds by all the evidence in the case.
The next question is, had the defendants the right on their counter claim to recover back the sums paid the plaintiff in the way of margins. .This the court charged they had the right to do, “less the amount they received by the way of profits, ” if the jury found under the instructions before given them, that the “ contrácts were gambling transactions,” and were known'at the time tobe such by the plaintiff.
The plaintiff makes two objections to the right of the defendants to recover. 1. That he simply acted as agent of the defendants in making the purchases and sales, and that the money received by him was paid to the persons with whom he dealt on behalf of the defendants; and that he is, therefore, not the “winner” — the statute, section 4270, Revised Statutes, simply providing for a recovery against the *254 “ winner” by tbe loser on any bet or wager. 2. That be paid the money over according to the understanding before notice or suit brought.
If these purchases and sales of grain were in fact wagers on the future price of the grain ostensibly dealt in, then it is clear that the relation of principal and agent did not exist between the defendants and'the plaintiff; and, that they were such, was found -by the verdict of the jury under proper instructions from the court.
The parties to a wager stand in opposed relations, each acting for himself in the matter of making it. Both may be particeps criminis with respect to the crime, in other words principals in its commision, but neither acts for the other. And this is so in many offenses against public policy, as in usury and the like.
It is not doubted but that in a sense either party to a wager may have an agent — that is, either may act for himself through another. As in this case, the defendants at first acted through Hale, who, by their direction, put up the margins for them; and so the plaintiff may have acted for or with other parties in Chicago. But under the finding of the jury, that the transactions between the parties were wagers, neither could have acted for the other. The assumption of the plaintiff that he was buying or selling wheat for the defendants, was a mere disguise adopted for the purpose of concealing the nature of the real transaction; and, as it had no foundation in fact, the agency based upon it is alike a mere assumption and had no real existence. The transactions were had directly-with the plaintiff though his agent, Collins, at C] eveland. The money was received of the defendants by Collins and transmitted to him at Chicago. If he saw fit to divide with others associated with him in making the wager, that was a matter of his own concern, but it cannot alter the case, nor affect the right df the defendants to recover from him as a “winner” under the statute.
The cases cited and relied on by counsel for the plaintiff in error, are without application here, for the reason that they are all cases where there was no question about the agency of the party from whom a recovery was sought. Smith v. *255 Bromley, Doug. Rep. 696, note; Bone v. Eckless, 5 H. & N. 925, 928; Wharton on Agency, section 250. They establish the well settled principle, that where money is delivered to an agent to be applied to an illegal purpose, whilst the agent has no right to retain it, yet where he has paid it over in accordance with the instructions to him, before notice from the principal not to do so, no recovery can be had against him. For example, if suit had been brought by Buel and Watkins to recover of Hale the money placed in his hands to be put up as margins with Tester, Hale, by way of defense, might have shown that he had placed the money as instructed before notice to him not to do sof But Tester can make no such defense, the character of' agent .having been simply assumed, to conceal the real nature of the relation between himself and the defendants, and to disguise what was known to be a crime. The relation was an assumed, and not a real one; and is, therefore, no defense to the action given the loser by statute to recover of the winner money lost on a wager.
The provisions of section 4270 are not directed against any particular form of gambling. The language is, “If any person, by playing at any game, or by means of any bet or wager, loses to any other person any sum of money or other thing of value, and pays or delivers the same, or any part thereof, to the winner,” the person who so loses and pays may within the time named recover the same “from the winner thereof.” The evil is the same whether the money is' wagered upon the turn of a card, the result of a horse race, or the course of the market; and the language is broad enough to include not only either of these forms of betting, but any form in which money is lost, and paid to the “winner” upon a bet or wager. A wager is generally defined by lexicographers as something hazarded upon an uncertain event; and this agrees with its legal acceptation. As defined by ANSON, “A wager is a promise to pay money, or transfer property upon the determination or ascertainment of an uncertain event.” Anson, Contr. 166. With regard to the future, the market is always a matter of uncertainty and speculation. When left to its natural course it will fluctuate from day to day, but still more so when manip *256 ulated by gamblers, who, under the disguise of buying and selling, simply lay wagers upon its future course. Such transactions the legislature has, in section 6934a, Revised Statutes, declared to be gambling, and this section should be construed with section 4270, Revised 'Statutes, so as to suppress gambling upon the future price of grain and other commodities, as upon any other -uncertain event, not merely because of its evil influence upon public morals, but because of its ruinous effect upon legitimate trade and commerce. In Pearce v. Foote, 113 Ill. 228, 239, Scott, J., in construing similar statutes of the state of Illinois, said: “Although the statutes being considered are highly penal, there is no warrant for construing them with any uureasonable strictness. They ought rather to have a just, if not liberal, construction, to the end the legislative intention may be accomplished, — to prohibit all dealings in options in grains or other commodities. Nothing is productive- of more mischievous results. Considerable fortunes secured by a life of honest industry have been lost in a single venture in “options.” The evil is all the more dangerous from the fact it seemingly has the sanction of honorable commercial usage in its support. It is a vice that has in recent years grown to enormous proportions. legitimate transactions on the board of trade áre of the utmost importance in commerce. Such contracts, whether for immediate or future delivery, are valid in law, and -receive its sanction and all the support that can be given to them. It is only against unlawful “ gambling contracts” the penalties of the law are denounced, and no subtle finesse of construction ought to be adopted to defeat the end it is to be hoped may be ultimately accomplished.”
It may well be doubted, whether it required the legislative declaration contained in section 6934», Revised Statutes, that contracts for such options as are made punishable by it, should be construed to be “gambling contracts,” to bring them within the remedy given the loser against the winner by section 4270, Revised Statute; for, being wagers upon an uncertain event, they would come within the letter and spirit of that section, without such legislative provision; *257 and, to so hold, is not to give to tlie statute a liberal but a strict construction.
We see no error in the charge of the court. It was liberal to the plaintiff, and, in some respects, more so than was required by the law and facts of the case.

Judgment affirmed.