W. P. BURRUS v. H. WITCOVER.

(Filed 13 March, 1912.)

1. Contracts—Wagering—Cotton Futures—Lex Loci Contractus—Interpretation of Statutes.

An action upon a wagering or "future contract" in cotton cannot be maintained in this State, though entered into in another State where it is lawful. Revisal, secs. 1869, 3823, 3824.

2. Contracts—Wagering—Bills and Notes—Drafts—Holder—Consideration Illegal.

The owner of a draft which he knows to have been given in the unlawful purchase of cotton futures, or in maintaining or purchasing margins in contracts of that character, is a party to the prohibited contract, the consideration is illegal and he cannot recover from the payee in his action on the draft. Revisal, secs. 1689, 3823, 3824.

APPEAL from *Whedbee, J.,* at November Term, 1911, of CRAVEN.

This is an action to recover on a draft for $800, drawn 4 June, 1906, at Marion, S. C., by W. A. Godbold, in favor of Burrus & Strakley, and accepted by the defendant Witcover.

The defendant set up as a defense that the consideration for his acceptance was a gambling contract between the said Godbold and the plaintiff for the purchase of cotton.

The plaintiff offered evidence that he was the owner of the draft, and admitted that the firm of Burrus & Strakley had negotiated a number of contracts for Godbold for the purchase of cotton on margin, known as "future contracts," and that the draft, which is the basis of this action, was drawn to enable the said Godbold to furnish margins for other contracts, or to pay a debt for margins.

The defendant introduced a certified copy of the law of South Carolina, from which it appears that contracts for the sale of cotton and other things are illegal when it is not the intention of the parties to deliver the property, the subject of the contract, and for settlements to be made upon the basis of the difference in market values, and the plaintiff said, on his examination, that he did not commence his action in South Carolina because he knew he could not collect a gambling debt in the courts of that State.

Upon these admissions by the plaintiff, his Honor directed a judgment of nonsuit to be entered, and the plaintiff excepted and appealed.

*Guion & Guion for plaintiff.*
*Abernethy & Davis for defendant.*

ALLEN, J. The plaintiff objected to the introduction of the certified copy of the laws of South Carolina, and while we think it was competent, it is not, in our opinion, material to the decision of this case, as our courts would not aid in the enforcement of the contract, if it is a gaming contract, although valid in South Carolina. *Gooch v. Faucett,* 122 N. C., 272; *Cannaday v. R. R.,* 143 N. C., 443.

In the latter case, after stating that ordinarily matters bearing upon the execution, interpretation, and validity of a contract are determined by the law of the place where it is made, *Justice Connor* says: "The exceptions to the general rule are thus stated by Mr. Lawson, the editor of the excellent and exhaustive article on 'Contracts' in 9 Cyc., 674: 'The general doctrine that a contract, valid when it is made, is valid also in the courts of any other country or State, where it is sought to be enforced, even though had it been in the latter country or State it would be illegal and hence unenforcible, is subject to several exceptions: (1) When the contract in question is contrary to good morals; (2) when the State of the forum, or its citizens, would be injured by the enforcement by its courts of contracts of the kind in question; (3) when the contract violates the positive legislation of the State of the forum, that is, is contrary to its Constitution or statutes, and (4) when the contract violates the

public policy of the State of the forum. These exceptions are grounded on the principle that the rule of comity is not a right of any State or country, but is permitted and accepted by all civilized communities from mutual interest and convenience, and from a sense of the inconvenience which would otherwise result, and from moral necessity to do justice in order that justice may be done in return.' "

That the contract between Godbold and the plaintiff, as described by the plaintiff, is one condemned by the laws of this State cannot be questioned (Revisal, secs. 1689, 3823, and 3824), and one who is a party to such a contract is not only indictable, but the statute says, in language that cannot be misunderstood, that "No action shall be maintained in any court to enforce any such contract, whether the same was made in or out of the State, or partly in and partly out of this State, and whether made by the parties thereto by themselves or by or through their agents, immediately or mediately; nor shall any party to any such contract, or any agent of any such party, directly or remotely connected with any such contract in any way whatever, have or maintain any action or cause of action on account of any money or other thing of value paid or advanced or hypothecated by him or them in connection with or on account of such contract and agency."

It would seem to follow necessarily that the plaintiff cannot maintain his action in our courts except upon the ground that the defendant was not a party to the illegal contract, and that he is bound by his acceptance. The difficulty with this position is that both the plaintiff and the defendant were parties to the contract, and the only consideration for the acceptance of the draft by the defendant was to enable Godbold to continue his illegal transactions.

The exact question seems to have been decided in England in 1794, in *Steers v. Lashley,* 6 T. R., 61, which was approved on this point in *Embrey v. Jemison,* 131 U. S., 347, and this last case was cited with approval by our Court in *Garseed v. Sternberger,* 135 N. C., 502.

The case of *Steers v. Lashley, supra,* "was an action on a bill of exchange drawn by Wilson on the defendant, and indorsed

over by the former to the plaintiff after it had been accepted by the defendant. At the trial at the sittings at Westminster before *Lord Kenyon* it appeared that the defendant had engaged in several stock-jobbing transactions with different persons, in which Wilson was employed as his broker and had paid the differences for the defendant. That a dispute arising between Wilson and the defendant respecting the amount of those differences, the matter was referred to the plaintiff and three others, who awarded £306, 12s. 6d. to be due from the defendant to Wilson; for £100 part of which Wilson drew the bill, on which the action was brought." *Lord Kenyon* nonsuited the plaintiff, being of opinion that as the bill grew out of a stock-jobbing transaction, which was known to the plaintiff, he could not recover upon it, and in delivering his opinion, he said: "If the plaintiff had lent this money to the defendant to pay the differences, and had afterwards received the bill in question for that sum, then according to the principle established in *Petrie v. Hannay* he might have recovered. But here the bill on which the action is brought was given for these very differences; and therefore Wilson himself could not have enforced payment of it. Then the security was indorsed over to the plaintiff, he knowing of the illegality of the contract between Wilson and the defendant, for he was the arbitrator to settle their accounts; and under such circumstances he cannot be permitted to recover on the bill in a court of law."

This language was quoted in *Embrey v. Jemison, supra,* and the Court further says in that case: "While there are authorities that seem to support the position taken by the defendant in error, we are of opinion that, upon principle, the original payee cannot maintain an action on a note, the consideration of which is money advanced by him or in execution of a contract of wager, he being a party to that contract, or having directly participated in the making of it in the name or on behalf of one of the parties."

The cases of *Williams v. Carr,* 80 N. C., 299, and *Ballard v. Green,* 118 N. C., 392, are not in conflict with these views, as they are interpreted in the latter case, where the Court says, after referring to parts of the charge of the judge of the Supe-

*In re* BATTLE.

rior Court: "This means, if the jury believed that Duke loaned the money and had no connection with the speculations, that it was a valid contract, and plaintiff would be entitled to recover. *Williams v. Carr,* 80 N. C., 294."

We are, therefore, of opinion that the consideration for the acceptance by the defendant was illegal, and that there is no error.

Affirmed.