## ORVIS BROTHERS & CO. v. HOLT-MORGAN MILLS.

### (Filed 28 March, 1917.)

**1. Instructions—Illegal Contract—Cotton Futures—Special Requests—Trials —Statutes.**

The trial judge is required by our statute to state in a plain and correct manner the material portions of the evidence given in the case and explain the law arising thereon, Rev., sec. 535; and where in an action upon contract it is alleged in defense, with evidence to support it, that the contract was a wagering one in cotton futures (Rev., secs. 1689, 3823, 3824) the judge should to some extent explain the statute, the consideration of the

contract which would make it illegal, and the law applicable; and his merely placing the burden on defendant, and instructing the jury to answer the issue "Yes" if the defendant had shown it was illegal, but if it had failed in this respect to answer it "No," is insufficient and constitutes reversible error, though no special requests were tendered on this phase of the case.

### 2. Contracts—Wagering—Bills and Notes—Courts.

A note given for margins upon an illegal contract for cotton futures, without intention of delivery of the cotton, cannot be collected by suit in our courts, and the promisor's repeated promise to pay it cannot impart any validity to it.

CIVIL ACTION, tried before *Winston, J.*, and a jury, at September Term, 1916, of CUMBERLAND.

The action was brought to recover the amount of a promissory note made by the defendant to the plaintiffs 25 March, 1915, for $2,100, due sixty days after date. Plaintiff introduced the note in evidence and then rested. Defendant alleged that the note was given for margins upon what is known as "futures" or contracts in the form of sale of cotton to be delivered in the future, when there was no real intention to deliver the cotton, but merely to settle them by paying the differences in prices according to the rise or fall in the market. There was evidence tending to show that the original note was given for such margins and renewed from time to time. The jury returned the following verdict:

1. At the time of the alleged indebtedness to Orvis Bros. & Co. by the defendant, and at the time of the execution of the note sued on, was the defendant Holt-Morgan Mills engaged in the ordinary course of its business in the manuacture of cotton? Answer. "Yes."

2. Is the defendant indebted to the plaintiff; and, if so, in what sum? Answer: "$2,100 and interest from 25 March, 1915."

3. Was the note in question based on a contract for cotton on margins and without any intention of the contracting parties to deliver or receive the actual cotton? Answer: "No."

Judgment for the plaintiff, and appeal by defendant.

*Johnson & Johnson for plaintiff.*
*Robinson & Lyon and Cook & Cook for defendant.*

WALKER, J., after stating the case: The charge of the judge was very meager. He simply instructed the jury that the burden was upon the defendant, and if it had shown that the contract was illegal, they should answer the third issue "Yes," but if it had failed in this respect they should answer it "No." We do not think this was an adequate

charge or a compliance with the statute. All the evidence tended to show that the contracts for the pretended sales of cotton were condemned by our statute. Revisal, secs. 1689, 3823, 3824. There was no instruction or intimation to the jury as to what would be an illegal contract and in this respect the jury were left, without any aid from the court, to pass upon the validity of the note according to their own notion of the law. The statute requires that "The judge shall state in a plain and correct manner the evidence given in the case and declare, and explain, the law arising thereon." This was not done. The jury were not told what would constitute an "illegal consideration" or a "gambling contract" under the statute in cases of this kind. · Nor was anything of the kind said to them which was calculated to enlighten their minds upon this vital question in the case. The judge must instruct the jury as to the law of the case in some way, even if it be a general statement of the same. In the latter event, if either party would have more special instructions given, he must ask for them.

We said in *Simmons v. Davenport,* 140 N. C., 407 : "The rule which requires that the complaining party should ask for specific instructions if he desires the case to be presented to the jury by the court in any particular view, does not of course dispense with the requirement of the statute that the judge shall state in a plain and correct manner the material portions of the evidence given in the case and explain the law arising thereon. Revisal, sec. 535; *S. v. Kale,* 124 N. C., 816." The statute clearly defines what is an illegal contract where there is no real sale, but merely an agreement for an adjustment upon the basis of the differences in the prices of the commodity at the time fixed. Gregory's Supplement, sec. 1689. But the jury are not supposed to know these provisions or to understand them, and their meannig should have been explained to them, not in every phase or view of the matter, but at least in a general way, so that they might comprehend the inquiry submitted to them.

We said in *Edgerton v. Edgerton,* 153 N. C., 167 : "The form of the contract is not conclusive in determining its validity when it is assailed as being founded upon an illegal consideration and as having been made in contravention of public policy. If under the guise of a contract of sale the real intent of the parties is merely to speculate in the rise or fall of the price and the property is not to be delivered, but only money is to be paid by the party who loses in the venture, it is a gambling contract and void." And again: "When, however, there is no real transaction, no real contract for purchase or sale, but only a wager upon the rise or fall of the price of stock, or an article of merchandise in the exchange or market, one party agreeing to pay, if

there is a rise, and the other party agreeing to pay if there is a fall in price; the agreement is a pure wager. No business is done—nothing is bought or sold or contracted for. There is only a bet."

In this case, was it the intention of both parties that the cotton should not be delivered, or was it their purpose to conceal, in the deceptive terms of a fair and lawful contract of sale, a gambling deal, or transaction, by which they contemplated no real bargain as to the article agreed to be delivered? If so, the contract is void. *Holt v. Wellons,* 163 N. C., 124. We said in that case: "Of course, the law deals only with realities and not appearances—the substance and not the shadow. It will not be misled by a mere pretense, but strips a transaction of its artificial disguise in order to reveal its true character. It goes beneath the false and deceitful presentment to discover what the parties actually intended and agreed, knowing that 'the knave counterfeits well—a good knave.' It always rejects the ostensible for the real in looking for fraud or a violation of law. The essential inquiry, therefor, in every case is as to the necessary effect of the contract and its true purpose." See, also, *Harvey v. Pettaway,* 156 N. C., 375, and numerous cases cited therein. A proper form of the issue in cases like this one is suggested in *Rankin v. Mitchem,* 141 N. C. at p. 281.

Another question is, can plaintiff recover upon the note if it was given in payment of margins due on contracts ostensibly for the sale of cotton, but really with no intention of a delivery?

It is said in *Embrey v. Jamison,* 131 U. S., 347: "While there are authorities that seem to support the position taken by the defendant in error, we are of opinion that, upon principle, the original payee cannot maintain an action on a note the consideration of which is money advanced by him upon or in execution of a contract of wager, he being a party to that contract, or having directly participated in the making of it in the name or on behalf of one of the parties." That case was cited with approval in *Garseed v. Sternberger,* 135, N. C., 502, where it was held: "If a broker or other agent is employed to carry out an illegal transaction, and is privy to the unlawful design, and by virtue of his employment performs services, makes disbursements, suffers losses, or incurs liabilities, he has no remedy against his principal. Not only is this true, but it has been held that any express promise made by the principal to reimburse him is void, citing *Embrey v. Jamison* and other cases. Both cases were approved in *Burrus v. Witcover,* 158 N. C., 384, with a full discussion by *Justice Allen.*

If the jury believed the evidence as it now is, and found the facts to be in accordance with it, defendant was entitled to their verdict

(*Holt v. Wellons,* 163 N. C., at p. 130), and failed to receive it, per-haps, because the jury were not informed as to the law.  Errors in rulings upon the admission and exclusion of testimony were alleged, but they need not be noticed.

Repetitions of the promise to pay it did not impart any validity to the note.  It was just as void as before, if the consideration was mar-gins due on "futures," or gambling contracts, plaintiff being a party to the original transaction and note and continuing as such.  *Cobb v. Guthrie,* 160 N. C., 313; *Garseed v. Sternberger, supra; Burns v. Tomlinson,* 147 N. C., 645; *Burrus v. Witcover, supra.*

There was material error in the charge.

New trial.