## STATE v. CLAYTON.

(Filed May 23 1905.)

*Gambling Contracts—Futures—Bucket Shops—Prima Facie Evidence—Interstate Commerce.*

1.  The test of the validity of a contract for "futures" which the Statute of 1889, ch. 221, requires is the "intention not to actually deliver" the articles bought or sold for future delivery. No matter how explicit the words in any contract which may require a delivery, if in fact there is no intention to deliver, but the real understanding is that at the stipulated date, the losing party shall pay to the other the difference between the market price and the contract price, this is a gambling contract and void at common law and indictable under the statute.

2.  The Act of 1905, ch. 538, makes it indictable to open a place of business to facilitate and carry on the making of such contracts as are made indictable by the Act of 1889, ch. 221.

3.  Where contracts for future delivery are made, if there is not merely the formal provision in the writing that a delivery will be demanded, but, in fact, the right to require delivery, and an intention to demand it if the exigencies of the party's business shall require it, this is a legal contract, notwithstanding any mere expectation that delivery will probably not be required.

4.  Where parties to a purchase or sale upon margin of commodities for future delivery will not need such commodities in the ordinary course of their business, the Act of 1905, ch. 538, section 5, makes the purchase in such cases upon margin *prima facie* evidence that such contract is a wagering contract.

5.  Section 7, of ch. 538, of the Act of 1905, was intended to authorize *bona fide* contracts in the aid of business, but it was not intended to authorize manufacturers and wholesale merchants to gamble by buying commodities for future delivery when the intention is that there shall be no delivery.

6.  It is competent for the Legislature to provide that gambling contracts participated in by the defendant in this State, either originating or being ratified here, snall be indictable in our courts, and such contracts are not protected by the Interstate Commerce clause of the Federal Constitution.

INDICTMENT against M. T. Clayton, heard by *Judge R. B. Peebles* and a jury, at the April Term, 1905, of the Superior Court of PERSON County. From a judgment of guilty upon a special verdict, the defendant appealed.

*Robert D. Gilmer, Attorney-General,* for the State.
*Winston & Bryant* and *Guthrie & Guthrie* for the defendant.

CLARK, C. J. This is an indictment under chapter 221, Laws 1889, for the purchase, in Person County, this State, of 5,000 pounds of pork for future delivery upon a "margin" from a firm in Philadelphia. The special verdict finds that the pork was not to be actually delivered, but that settlement was agreed to be made upon the difference in value of said pork on July 1, 1905; that the defendant is a dealer in wholesale merchandise and that he purchased said pork on a "margin" to protect his contract with customers who had purchased pork from him for actual delivery at a future date. That is, as we understand the findings of fact, the defendant had sold pork, in the ordinary course of his business, to customers to be delivered at future dates, and, to protect himself from the loss by a rise in the price of such pork before the delivery dates, he had bought 5,000 pounds of pork on "margin."

As already pointed out by us in *State v. McGinnis* at this term, this statute (1889, ch. 21) does not forbid all purchases and sales of commodities for future delivery, but only when under such contracts actual delivery is not intended. If the purchase had contemplated the actual future delivery of the 5,000 pounds of pork, so that out of it the defendant might make his future deliveries (instead of buying meat and holding it with the attendant risk of loss of weight, theft, loss by fire, etc.), it would be a *bona fide* transaction not forbidden by chapter 221, Laws 1889, and is such transaction as is contemplated by section 7, chapter 538, Laws 1905. But

upon the special verdict it affirmatively appears that it was intended that the 5,000 pounds were not to be actually delivered, and that settlement was to be made by paying on July 1, 1905, the difference in value on that day between the contract price and the market price. This brings the transaction directly within the inhibition of the Act of 1889 and the evil thereby intended to be remedied.

The Act of 1889, ch. 221, section 1, provides that whenever "in fact and notwithstanding the terms expressed in such contract, it is not intended by the parties thereto that the articles or things, so agreed to be sold and delivered, shall be actually delivered or the value thereof paid, but it is intended and understood by them" that instead of delivery there shall be paid by one party to the other merely the difference between the market value, on the day specified, of the article bought and sold and the contract price, such contract shall be void. Section 2 provides that when the verified answer sets up that a contract sued upon is of this nature, the burden shall be upon the plaintiff to prove that it is a lawful contract. Section 3 provides that every party to such contract or the agent of any party in making, furthering or effectuating the same, and every agent or officer of any corporation knowingly aiding in the furtherance of such forbidden contract, is indictable; and section 4 provides that every person who shall while in this State consent to become a party to any such contract made in another State "shall be guilty of a misdemeanor."

This is a brief summary of the Act of 1889, which is very full and complete, and was drawn with great care and consummate skill to avoid any possible evasion or loop-holes for escaping its purpose, which was to make punishable all "wagering" contracts, or gambling or betting upon the rise or fall in the prices of any commodity, the Legislature being probably moved not only by the disastrous effects upon those engaging in such gambling, but by the still more disastrous

results to producers and manufacturers and consumers by the manipulations of gamblers in "futures" upon the prices of the products of industry.

The test which the statute requires is the "intention not to actually deliver" the articles bought or sold for future delivery. No matter however explicit the words in any contract which may require a delivery, if in fact there is no intention to deliver, but the real understanding is that at the stipulated date the losing party shall pay to the other the difference between the market price and the contract price, this is a "gambling" contract and is null and void at common law. *Irwin v. Williar,* 110 U. S., 499; *Bibb v. Allen,* 149 U. S., 481; *Clews v. Jamieson,* 182 U. S., 461. The above statute makes it indictable; and chapter 538, Laws 1905, makes it indictable to open a place of business to facilitate and carry on the making of such contracts.

Contracts for the delivery of any article in the future are legitimate, unless there is no intention to deliver. Where contracts for future delivery are made, if there is not merely the formal provision in the writing that a delivery will be demanded, but in fact the right to require delivery and an intention to demand it if the exigencies of the party's business shall require it, this is a legal contract, notwithstanding any mere expectation that delivery will probably not be required.

When parties to the purchase or sale upon "margin" of commodities for future delivery will not need such commodities in the ordinary course of their business, the strong probability is that it is a gambling contract, and the statute (1905, ch. 538, sec. 5), makes the purchase in such cases upon "margin" *prima facie* evidence that such contract is a "wagering" contract, but when such purchase for future delivery upon "margin" is by manufacturers or wholesale merchants "of the necessary commodities required in the ordinary course of their business," it is more reasonable to believe that such purchases are *bona fide,* and in such cases and

as to such necessary articles, the purchase upon "margin" is not made *prima facie* evidence of a gambling contract. This is a matter of legal procedure within the legislative discretion, as was held in *State v. McGinnis* at this term.

It is the presence of the intention that no delivery shall be made which stamps a contract, dealing in "futures," as criminal under the statute—a "wagering" contract pure and simple, and not a legitimate transaction. When, however, a person engaged in business buys or sells "futures" with a view not to take but to avoid risks in his business by reason of possible fluctuations in the commodities which he must need in the ordinary course of that business, and he retains *bona fide* the right to call for delivery, and there is no intention not to exact delivery, this is a valid contract, though he may think it probable that he will not need to call for delivery, if it shall turn out (as he may expect) that he can buy these commodities from time to time nearer home and thus save freight, being secured against loss by his purchase of futures. The difference is that in this last case the party will need actual delivery from some one, of the very articles and quantity bought as "futures" for the ordinary purposes of his business, that there is therefore no gambling feature in the dealing, and though he may expect, indeed think it probable, that he may secure the actual delivery from time to time from others, there is no intention that he will not in any event call for delivery upon his purchase of "futures;" but on the contrary there is the positive intention to call for such delivery if he cannot get the articles elsewhere, and more advantageously, as needed.

It is this class of *bona fide* contracts, in the aid of business, and not for "gambling" purposes that section 7, chapter 538, Laws 1905, was intended to authorize. That section did not in words authorize, nor can it be construed to intend to authorize, manufacturers and wholesale merchants to

"gamble" by buying commodities for future delivery when the intention is that there shall be no delivery.

We are relieved from any difficulty as to the nature of the transaction, in the present case, by the finding in the special verdict that there was no intention to require actual delivery, but, on the contrary, an agreement that on July 1, 1905, the loser should pay the winning party the difference between the market value on that day and the contract price. This is a "gambling" contract and the statute does not exempt the defendant from punishment therefor because he is a wholesale merchant and deals in such commodities in his ordinary business.

Nor can it be held that such "gambling contracts" are protected by the Interstate Commerce clause of the Federal Constitution: 1. The act made indictable is not the purchase in Philadelphia, but the assent to and participation in the illegal transaction by the defendant in this State. When a shot is fired across the State line, at common law the crime is triable in the State where the shot took effect, but by statute the offense may be made punishable by the State in which the person stood when firing the shot. It is for this State "to determine what acts committed within its limits shall be deemed criminal." *State v. Hall,* 114 N. C., p. 922. 2. It is not a matter of Interstate Commerce at all, but of criminal law. Such dealings are illegal, irrespective of statute, being contrary to public policy and *contra bonos mores. Clews v. Jamieson, supra;* Cook on Stock and Stockholders (3 Ed.), sec. 341. It is competent for the Legislature to make such acts, participated in by the defendant in this State, either originating or being ratified here, indictable in our courts.

No Error.