STATE v. McGINNIS.

(Filed May 23, 1905.)

*Dealing in Futures—Bucket Shops—Police Power—Unlawful Discrimination—Gambling or Wagering Contracts—Constitutional Law—Prima Facie Evidence.*

1.  The Act of 1889, ch. 221, making void all contracts for the sale of articles for future delivery, wherein it is not intended there shall be an actual delivery, but only the difference between the contract price and the market value at the time stipulated shall be paid; and the Act of 1905, ch. 538, forbidding the business of running a "bucket-shop" are clearly within the police power of the State.

2.  The Act of 1905, forbidding the business of running a "bucket shop," is not void under the Fourteenth Amendment to U. S. Constitution, because the 7th section provides that the act "shall not be construed so as to apply to any person, etc., engaged in the business of manufacturing or wholesale merchandising, in the purchase or sale of the necessary commodities required in the ordinary course of their business."

3.  A purchase for actual future delivery of necessary commodities required in the ordinary course of business and not for wagering or gambling on the fluctuations of the market, is not prohibited by the "bucket shop" statutes.

4.  Section 7, of the Act of 1905, does not confer any exclusive right or privilege upon manufacturers or wholesale merchants—it does not authorize them to engage in any business prohibited by the Act of 1889, nor to speculate in cotton or other commodities.

5.  The Legislature can, in the exercise of the police power, prescribe when and under what circumstances and as to what offenses a certain act shall be *prima facie* evidence. Therefore, a provision that the purchase of commodities upon margin under certain circumstances shall raise a *prima facie* case that such purchases were void, and other circumstances shall not constitute such *prima facie* evidence, is not a discrimination forbidden by the Fourteenth Amendment.

6.  The Legislature has unquestionably power to make the business of carrying on a "bucket shop" indictable.

7.  If a provision as to *prima facie* evidence as to certain purchases upon margin, were null because not applying to all purchases upon margin, this would in no wise invalidate that part of the statute which forbids carrying on the business of running a "bucket shop," as a statute may be void in part and valid in part.

INDICTMENT against E. C. McGinnis, heard by *Judge Walter H. Neal* and a jury, at the March Criminal Term, 1905, of. the Superior Court of WAKE County. From a judgment of "guilty" upon a special verdict, the defendant appealed.

*Robert D. Gilmer, Attorney-General,* for the State.
*Busbee & Busbee* and *Argo & Shaffer* for the defendant.

CLARK, C. J.   This is an indictment under chapter 538, Laws 1905, "to prevent dealing in futures."

By chapter 221, Laws 1889, "to suppress and prevent certain kinds of vicious contracts," it was in substance enacted as follows: section one made void all contracts for the sale of articles therein named for future delivery, wherein (notwithstanding any terms used) it is not intended that the articles agreed to be sold and delivered shall be actually delivered, but only the difference between the contract price and the market value at the time stipulated shall be paid. Section two enacted that when the defense provided by that act is set up in a verified answer, the burden shall be upon the plaintiff to prove a lawful contract, but the answer shall not be used against the defendant on an indictment for the transaction.   Section three made the parties to such contract, and agents concerned therein, indictable, and section four made persons while in this State consenting to become parties to such contract, made in another State, and all agents in this State, aiding and furthering such contract, made in another State, indictable.

Chapter 538, Laws 1905, provides: Section 1. That it shall be unlawful to open or establish an office in this State for dealing in futures, as forbidden by aforesaid act. Section 2 makes such act a misdemeanor. Section 3 provides that no person participating in such act shall be excused from testifying, but a party so testifying is pardoned for such offense. Section 4 specifies certain acts which shall be *prima facie* evidence of a violation of this statute. Section 5 specifies what shall be *prima facie* evidence of a contract forbidden by the Act of 1889, and section 6 provides what shall be *prima facie* proof of the opening and establishing an office in violation of this act and the Act of 1889.

So far, the provisions of both acts clearly fall within the police power of the State, and it is not denied that if nothing further appeared in the statute, the defendant is guilty upon the facts found in the special verdict, which are that the defendant opened and established an office in Raleigh for the purpose of carrying on the business forbidden by the above cited statutes, Laws 1889, ch. 221, and Laws 1905, ch. 538.

The business forbidden by the Act of 1905 is—to avoid a paraphrasis, and following the usual American method of describing an act by a word or a phrase—the business of running a "bucket shop," which is defined by the Century Dictionary as, "An establishment, nominally for the transaction of a stock exchange business, or business of a similar character, but really for the registration of bets, or wagers, usually for small amounts, on the rise or fall of the prices of stocks, grain, oil, etc., there being no transfer or delivery of the stock or commodities nominally dealt in." In *Board of Trade of Chicago v. Odell Commission Co.,* 115 Fed. Rep., 574, the president of the Board of Trade, in answer to a question, thus defined a "bucket shop:" "It is a place where dealings are had upon the fluctuations in the market price, without any *bona fide* transactions." The definition of "bucket shop" in Webster's Dictionary is, "An office or place

where facilities are given for betting small sums on current prices of stocks, petroleum, etc.

In *Smith v. Tel. Co.,* 84 Ky., 664, the court describes the manner of dealing at a "bucket shop" in full detail, and defines its business, "while purporting to be actual transactions" as being *"in fact merely wagers* on the market price of some commodity, at some specified time in the future," and in the absence there of any statute, held that such business was "a species of gambling as well defined and reprehensible as that of keeping a faro bank or a dice machine, and it is therefore illegal and contrary to public policy." A "bucket shop" is defined (*Bryant v. Tel. Co.,* 17 Fed. Rep., 825, and *Fortenbury v. State,* 47 Ark., 192), as "a place where wagers are made upon the fluctuations in the price of grain and other commodities," and in both cases the course of dealings at such establishment is fully described, as in *Smith v. Tel. Co., supra,* but in all these cases, of course, solely upon the information given the learned judges by the testimony of witnesses, set out in the record.

In *Weare v. People,* 209 Ill., 528, is a recent, full and able discussion of statutes against "bucket shops," sustaining *Soby v. People,* 134 Ill., 66. Indeed, the word "bucket shop," as well as the business it transacts, is mentioned and denounced in many statutes and decisions, and both the name and the business have become matters of general knowledge. In *Booth v. Illinois,* 184 U. S., 425, it was held that the Illinois statute making all "dealings in futures" gambling contracts and punishable, was within the police power of the State and not prohibited by the Fourteenth Amendment—affirming s. c., 186 Ill., 43.

In *Irwin v. Williar,* 110 U. S., 499, the court said: "If under guise of the contract to deliver goods at a future day the real intent be to speculate in the rise or fall of prices, and the goods are not to be delivered, but one party is to pay the other the difference between the contract price and the

market price of the goods at the date fixed for executing the contract, the whole transaction is nothing more than a wager, and is null and void." *Wagner v. Hildebrand,* 187 Pa. St., 136; *Jamieson v. Wallace,* 167 Ill., 388; *Wheeler v. Stock Exchange,* 72 N. H., 315; *Clews v. Jamieson,* 182 U. S., 461; *Pickering v. Cease,* 79 Ill., 328; *Bibb v. Allen,* 149 U. S., 481; 1 Cook on Stock and Stockholders, 3rd Ed., sec. 341.

Freund on Police Power (1904), p. 186, says: "It is well established that if there is no intention to buy or sell, but only to pay or receive differences in value, the transaction is simply betting on the rise or fall of market prices, and hence illegal and void."

While the facts found bring the defendant within the words of the statute, it is contended that the addition of the seventh and last section made the whole act unconstitutional and void under the Fourteenth Amendment to the Constitution of the United States, which guarantees the equal protection of the laws. Said section 7 reads: "This act shall not be construed so as to apply to any person, firm, corporation, or his or their agent, engaged in the business of manufacturing or wholesale merchandising in the purchase or sale of the necessary commodities required in the ordinary course of their business." This section - is stated by counsel, and we believe was admitted on the argument, to have been added upon the passage of the bill in the second House. It was doubtless hastily drawn, for it is clearly not germane to the statute which is for the prohibition of the establishment or opening an office for the purpose of engaging in or carrying on the business of a "bucket shop," i. e., dealing in the sale of futures, where "it is not intended by the parties thereto that the articles agreed to be sold and delivered shall be actually delivered, or the value thereof paid, but it is intended and understood by them" that merely the difference between the contract price and the market price of the article at the

time specified shall be paid.  Such condemned business has no connection with, and the constitutionality of the prohibitive act is in no wise affected by, the provision in section 7, that when any person, firm or corporation engaged in manufacturing or wholesale merchandise shall purchase or sell "the necessary commodities required in the ordinary course of their business," it shall not be deemed a violation "of this act"—the act forbidding the business of carrying on a "bucket shop."

The defendant, however, contends that the purpose of section 7 is to provide that where any manufactory or wholesale merchandising house shall contract to deliver goods at a future date, such establishment may protect itself or "hedge" (as it is called) by purchasing a "future" contract for raw commodities, without intending to demand actual delivery of those identical goods, but, by the profit thereby made, to recoup the loss by the rise in price of the same commodity subsequently bought, perhaps for actual delivery nearer home, to save freight.  It is enough to say that no such intent is expressed in section 7, and we must construe it as it is written.

But a purchase for actual future delivery of necessary commodities required in the ordinary course of business and not for "wagering" or gambling on the fluctuations of the market, would not be against the statute.  The statute of this State does not prohibit all purchases or sales for future delivery, but only such dealings as are in the nature of gambling or wagering contracts.  Though section 7 mentions only manufacturers and wholesale merchantile establishments as authorized to make *bona fide* dealings in "futures," this was done unnecessarily, we think, and only out of abundant caution.  It is not a discrimination, for there is no prohibition upon any one else or any other business to buy commodities for future delivery *bona fide* in the "ordinary course of such business," when not for speculative or gambling purposes.

That no other businesses or persons are mentioned as author-
ized to deal *bona fide* for the purchase of commodities on
"margin," is not an implied restriction upon others to do
an act not forbidden by any statute.

Section 7 does not confer any exclusive right or privilege
upon manufacturers or wholesale merchants. It does not au-
thorize them to engage in any business prohibited by the Act
of 1889. It does not authorize them to speculate in cotton
or other commodities. It simply provides that the courts
shall not construe the Act of 1905 to have the effect of pre-
venting them from buying and selling for future delivery the
necessary commodities required in their ordinary business.

The defendant further contends that by section 5, chapter
538, Laws 1905, proof that nothing was actually delivered at
the date of the contract and that a "margin" was put up,
shall be *prima facie* evidence that the contract is a "wager-
ing" one and forbidden by chapter 221, Laws 1889, and that
section 7, chapter 538, Laws 1905, providing that this last
act shall not apply to purchases or sales by manufacturers
or wholesale merchants of the necessary commodities required
in the ordinary course of their business, is a discrimination
forbidden by the 14th Amendment. We do not think so, for
the prescribing when and under what circumstances and as to
what offenses a certain act shall be *prima facie* evidence,
is necessarily a matter left to legislative discretion in the
exercise of the police power. There may be good reasons
why the purchase of "necessary commodities required in the
ordinary course of their business" for future delivery on a
"margin," by manufacturers and wholesale merchants, shall
not raise a presumption that such dealings are "wagering"
contracts, while purchases by them, not of such commodities,
or when not "required in the ordinary course of their busi-
ness," or the purchase by others of any commodities, when
made on the deposit of a "margin" and for "future" delivery,
shall raise the presumption of a "wagering" contract.

STATE *v.* McGINNIS.

Whether the reason is good and sound for making the purchase of commodities upon "margin" *prima facie* evidence of a "wagering" contract, under a certain state of facts, and providing that upon a different state of facts such purchase upon "margin" does not constitute *prima facie* evidence of a "wagering" contract, is a matter for the Legislature. The courts have no veto power upon such exercise of the police power. *State v. Barrett,* at this term.

But aside from what we have already said, the defendant is indicted for carrying on a "bucket shop" business. The Legislature had unquestionably power to make such business indictable. *Booth v. Ill.,* 184 Ill., 425, and other cases cited, *supra.* The facts found are that the defendant was carrying on the forbidden business. It can in no wise affect the validity of the statute making such business indictable that the purchase of commodities by others upon "margin," shall under certain circumstances raise a *prima facie* case that such purchases were void, and under other circumstances shall not constitute such *prima facie* evidence. A statute may be void in part and valid in part. If the provision as to *prima facie* evidence, as to certain purchases, upon "margin" were null, because not applying to all purchases upon "margin," this would in no wise invalidate that part of the statute which forbids carrying on the business of running a "bucket shop." The defendant is not indicted for buying commodities for future delivery upon a "margin;" nor are manufacturers and wholesale merchants, nor any one else, exempted from the prohibition of carrying on the "bucket shop" business. Upon the special verdict the defendant was properly adjudged guilty.

No Error.