RANKIN v. MITCHEM.

(Filed May 8, 1906).

*Contracts—Agreements to be Reduced to Writing—Question for Jury—Sales—Delivery—Gambling Contract—Futures —Mutuality.*

1. Where at the time defendant proposed to draw up the contract, a complete verbal agreement had been made between the parties, and the contract was reduced to writing and signed by plaintiff Rankin and the defendant, the fact that plaintiff's partner did not sign it does not invalidate either the oral or written contract.

2. Where the parties orally agree upon the terms of a contract and there is complete assent thereto, the suggestion to put it in writing at a subsequent time is not of itself sufficient to show that they did not mean the parol contract to be complete and binding without being put in writing. The question is largely one of intention.

3. In an action for damages for breach of contract by defendant in the purchase of 160 bales of cotton to be delivered by plaintiff on a fixed date, evidence that on the date fixed, plaintiffs notified defendant that they had the cotton at L. and were ready to deliver according to contract and that defendant asked for extension of time for the delivery, and that plaintiff made two other tenders, is amply sufficient to support the finding that plaintiffs were ready, able and willing.

4. Where the plaintiffs agreed to sell to defendant 100 bales of cotton at a fixed price to be delivered on February 20, and the defendant agreed to pay for the same, and there was a further clause in the contract that plaintiffs "agreed to take the cotton off the hands of defendant at the market price on February 20," this last clause is a unilateral promise not binding, or intended to bind, the defendant, and only intended to bind the plaintiffs, and the contract is not a gambling one on its face.

5. Where the contract was not a gambling one on its face, the court properly left to the jury to ascertain the underlying intention of the parties to the contract—whether it was the intention that there should not be an actual delivery of the cotton, but that the contract should be settled by the payment of the difference between the contract price of the cotton and the price of the same quality and grade of cotton at the time named for the delivery.

ACTION by J. C. Rankin against D. W. Mitchem, heard by *Judge C. M. Cooke* and a jury, at the September Term, 1905, of the Superior Court of GASTON.

This was an action to recover damages for an alleged breach of contract on the part of the defendant in the purchase of one hundred bales of cotton.

The following issues were submitted:

1. Did plaintiffs contract with the defendant to sell and deliver him 100 bales of strict middling cotton at Lowell, N. C., on February 20, 1905, for the price of 9⅝ cents per pound? Answer: Yes.

2. Was the time for the delivery of said cotton extended by mutual consent of the parties until April 10, 1905? Answer: Yes.

RANKIN *v.* MITCHEM.

3. Were the plaintiffs ready, able and willing to deliver said cotton to the defendant at the time agreed upon for the delivery? Answer: Yes.

4. Did defendant refuse to receive and accept said cotton? Answer: Yes.

5. What damage have plaintiffs sustained by reason of defendant's refusal to receive said cotton? Answer: $949.55.

From the judgment rendered, defendant appealed.

*O. F. Mason* and *Burwell & Cansler* for the plaintiffs.
*A. G. Mangum* and *Tillett & Guthrie* for the defendant.

BROWN, J. The controversy in this case as presented involves the consideration of the following contentions: Was the contract between the parties completed? Were the plaintiffs able, ready and willing to deliver the cotton according to agreement? Was the contract a wagering contract?

1. The evidence for the plaintiffs is clear that a parol contract was entered into by plaintiffs on the one part and defendant on the other part, whereby plaintiffs contracted to sell and deliver to defendant at Lowell on February 20, 1905, 100 bales of cotton at 9⅝ cents per pound, and equally clear that defendant contracted to take and pay for the same. The proposition to sell seems to have been made by Rankin, who took Robinson in as a copartner in the transaction, with the consent of the defendant. At the time that defendant proposed to draw up the contract, a complete verbal agreement had been made between the parties, and the contract was reduced to writing and signed by plaintiff Rankin and the defendant. The fact that Robinson did not sign it does not invalidate either the oral or written contract. The contract had been fully completed between the parties, and the reducing it to writing was not to make a new or different contract, but evidently to preserve the written evidence of what had already been assented to. The plaintiff Robinson

affirmed what his copartner had done, for, according to Rankin's evidence, Robinson was en route to Charlotte and left Rankin to fix up the writing, and told Rankin after he "got it fixed up to phone him at Charlotte and he would buy the cotton." It seems to be generally held that a binding contract may be made between parties although there is an understanding that it is to be reduced to writing, which writing is not completed by the signatures of all the parties. In the case of *Sanders v. Fruit Company,* 144 N. Y., 209, the Court of Appeals of New York said: "Letters and telegrams which constitute an offer and acceptance of a proposition, complete in its terms, may constitute a binding contract, although there is an understanding that the agreement must be expressed in a formal writing, and one of the parties afterwards refuses to sign such agreement without material modification." Where the parties orally agree upon the terms of a contract and there is complete assent thereto, the suggestion to put it in writing at a subsequent time is not of itself sufficient to show that they did not mean the parol contract to be complete and binding without being put in writing. The question is largely one of intention. From the plaintiff's evidence it is plain the parties intended to contract and did contract before the written evidence of it was drawn up, and that defendant afterwards recognized the contract by asking an extension of time. The subject is fully discussed in 29 L. R. A., 431, note. The court very properly left it to the jury to determine whether the contract was made between the parties as alleged.

2. It is further contended by the defendant that the evidence is insufficient to warrant the finding of the jury in response to the second and third issues. The plaintiffs' evidence, if believed to be true, establishes facts amply sufficient to support those findings. Rankin testified that on September 20 he personally notified defendant that they had the cotton at Lowell and were ready to deliver it according

to contract, and that defendant asked for an extension of time for the delivery and payment of the cotton. The plaintiff further testified that again on March 20 he tendered the cotton; that he had it at Lowell and offered to deliver it there or at Charlotte or Gastonia. Defendant asked plaintiff to carry it longer. At request of defendant plaintiffs carried it until April 10, when the cotton was again tendered and defendant refused to take it and pay for it. According to Rankin's testimony, he then had the cotton at Lowell ready to deliver. The jury appear to have accepted Rankin's evidence as true, and, having done so, they could do nothing less than find the second and third issues for the plaintiffs as their evidence proves three tenders and two extensions at defendant's request.

3. The defendant contends that the contract is, in any view of the evidence, a wagering contract and void. Among other issues, defendant tendered the following: "Was the said contract illegal and void?" We think it would have been better had His Honor submitted the issue. It would have called the jury's attention more pointedly to the principal controversy in the case. But, under the instruction given on the first issue, the defendant, so far as it was a matter for the jury, was given the full benefit of this defence, as appears by the following extract from the charge: "And if the jury shall find that the said contract was entered into by the defendant, but they shall further find that it was the understanding, agreement and intention of the parties that there should not be an actual delivery of the cotton, but that the contract should be settled by the payment of the difference between the contract price of the cotton and the price of the same quantity and grade of cotton at the time named for the delivery, by and to the one side or the other, according as the difference might be, they will answer the first issue 'no.'"

The contention that the contract is void on its face is based upon the written contract as follows: "This contract and

agreement, made and entered into this the 1st day of December, 1904, by and between D. W. Mitchem, of the first part, and S. M. Robinson and J. C. Rankin, of the second part, all of Lowell, N. C., witnesseth: That the said S. M. Robinson and J. C. Rankin agree to sell to D. W. Mitchem 100 bales of strict middling cotton, average weight 500 pounds, the price to be 9⅝ cents per pound. This cotton to be delivered on February 20, 1905, at Lowell, N. C. The said D. W. Mitchem, in consideration thereof, agrees to pay to the said S. M. Robinson and J. C. Rankin 9⅝ cents per pound, landed at Lowell, N. C. In witness whereof, both parties have signed, this 1st day of December, 1904. S. M. Robinson and J. C. Rankin agree to take the cotton off the hands of D. W. Mitchem at the market price on February 20, 1905. (Signed) D. W. Mitchem, Jno. C. Rankin." It is the last clause which the defendant contends vitiates the contract and discloses *per se* a gambling purpose. We admit that the contract does look suspicious and if the clause referred to compelled defendant to let plaintiff take the cotton off his hands at market price on February 20, as well as compelled plaintiffs to do so, it would be plainly a gambling contract and void on its face. The plaintiffs alone were bound by this clause of the contract, if anybody was bound by it, while both parties were bound by the first and second clauses. A reading of the instrument plainly indicates that it was the intention of the parties that both should be bound by the first two clauses, but only the plaintiffs by the last. There is no mutuality in this last clause and consequently no consideration to support it. It is very similar to the contract in *Quick v. Wheeler,* 78 N. Y., 300. There the plaintiff and defendant entered into a written contract, the first clause of which provided for the sale and delivery by the plaintiff to the defendant of certain timber, which was fully performed. The contract then provided as follows: "And I, said Wheeler, also agree to pay said Quick 4½ cents per foot for from 6,000

to 15,000 feet of same kind and quality of tie timber, as aforesaid, and delivered at the place aforesaid during the winter, to be paid on the first day of June, 1874." The contract was signed by both parties, but there was no agreement on the part of the plaintiff to deliver the last quantity of timber, and, although the plaintiff subsequently undertook to make deliveries in accordance with said clause of the contract the court said: "This contract when made was not binding, as it was based upon no consideration. The plaintiff parted with nothing and there was no mutuality. There was not that consideration which mutual promises give a contract. The plaintiff did not bind himself to sell and deliver the tie timber. Hence this contract can be treated only as a written offer on the part of the defendant to take and pay for the timber upon the terms stated. Story on Sales, section 126; Chitty on Cont., 15; 1 Parsons on Cont. (5 Ed.), 475; *Tuttle v. Love,* 7 Johns. (N. Y.), 470. This written offer could be revoked at any time before performance or a binding acceptance by the plaintiff." See also *Oil Co. v. Kirk,* 68 Fed. Rep., 791; *R. R. v. Dane,* 43 N. Y., 240; *Campbell v. Lambert,* 51 Am. Rep., 1; *Cherry v. Smith,* 39 Am. Dec., 150.

Under this interpretation of the contract the last clause therein is a unilateral promise not binding, or intended to bind, the defendant, and only intended to bind the plaintiffs, and it does not purport to obligate the defendant to do anything. In order to make an agreement valid and binding, the promises must be mutual; or, if unilateral, then there must be other sufficient consideration moving from the one party to the other. The insertion of the last clause cannot be said to be *conclusive* evidence of the *intention* of both parties that the contract should be discharged only by a payment of the difference between the contract price and the market price of the cotton on the day fixed for delivery. That being so, the matter is to be settled by ascertaining the real underlying in-

tention of the parties to the contract. Was it the intention of both parties to the contract that the cotton should not be delivered? Was it their purpose to conceal in the terms of a fair contract a gambling deal, in which the parties contemplate no real transaction as to the article to be delivered? This purpose and underlying intent His Honor properly left to the jury, the contract not being a gambling one on its face. *State v. Clayton,* 138 N. C., 733. There are no exceptions to the evidence, and those to the charge are without merit.

No Error.