RODGERS, McCABE & CO. v. J. H. BELL.

(Filed 9 November, 1911.)

1. **Contracts—Future Delivery—Wagering—Interpretation of Contracts.**

A contract for the sale and delivery of cotton will not be held void upon its face, as a matter of law, merely because it contains definite provision for an adjustment of damage on failure to deliver the cotton. *Harvey v. Pettaway, ante,* 375, cited.

2. **Same—Mutual Intent—Interpretation of Statutes.**

Revisal, sec. 1689, declaring unlawful and void certain contracts for future delivery of cotton, etc., by its use of the terms "but it is intended and understood" by the parties "that money or other things of value shall be paid . . . dependent on whether the market price or the value of the things shall be greater or less at the time and place, etc.," shows that the mutual intent of the parties is necessary to bring the contract within the intent of the statute.

3. **Same.**

An innocent party to a contract for the future delivery of cotton at a certain time and place, valid in its terms, cannot lose his rights thereunder merely because of an unexpressed intent of the other party that the cotton was not to be actually deliv-

ered, but that the gain or loss under the contract was to be ascertained from the rise or fall of the price of cotton in the market; for to avoid the contract the vitiating purpose must be shared by both.

4. **Statutes—Interpretation—As a Whole.**

A statute should be so construed as to make it harmonize with the existent body of the law, unless the legislative intent is clearly expressed to the contrary; and each and every clause shall be allowed significance if this can be done by any fair and reasonable interpretation.

5. **Statutes—Codification—Interpretation.**

Where laws have been codified and in case of ambiguity or doubt, permitting construction, it is proper for the court to examine the original legislation as an aid to a correct interpretation.

6. **Same—Futures—Exceptions—Evidence—Burden of Proof.**

The words at the end of section 1689 of the Revisal, qualifying its general provisions declaring that certain contracts known as futures are unlawful, by providing that they "shall not be construed so as to apply to any person, firm, or corporation . . . engaged in the business of manufacturing or wholesale merchandising in the purchase or sale of necessary commodities required in the ordinary course of their business," are meaningless as placed, and by interpretation from a consideration of chapter 328, Laws of 1905, where these qualifications are first used, and with reference to the Laws of 1889, it is plain that the proviso noted applies only to the method or quantum of proof, and hence should properly refer to section 1691 of the Revisal to give them their proper meaning and prevent their repugnancy to sections 1689 and 3823 of the Revisal. Thus construing the various acts *in pari materia*, the ordinary rule prevails in an action against those who come within the meaning of the proviso of section 1689, that one who asserts that an ordinary business contract is unlawful is required to prove it to the satisfaction of the jury by the greater weight of the evidence; and the defendant cannot be heard to complain of a charge which has in part put the burden of proof on him where the whole burden belonged.

7. **Contracts—Future Delivery—Breach—Damages—Wagering Contracts.**

A contract for the future delivery of cotton provided that upon the failure to deliver the cotton damages should be allowed on the basis of the difference between the contract price and

the highest market price between two dates several months apart: *Held,* the plaintiff, suing upon the contract, could only recover the difference between the market and contract price at the time and place of delivery.

Brown and Walker, JJ., concurring in result.

Appeal from *Ward, J.,* at April Term, 1911, of Edgecombe.

Civil action to recover damages for breach of contract in failing to deliver a certain amount of cotton. The written contract, on its face, provided for the delivery of 50,000 pounds of cotton at the depot or boat landing in Pollocksville, N. C., on or before 1 January, 1910, and contained a stipulation that in case the party of the second part failed to deliver said cotton or any part thereof, the damages should be admeasured at the highest price in the above-mentioned market on any day between 10 September, 1909, and 1 December, 1909, with interest, etc.

There was testimony on part of plaintiff tending to show a failure to deliver 29,454 pounds of cotton, causing damage, etc., and further that actual delivery of the cotton was intended. The defendant filed verified answer, admitting execution of the written contract and containing averment that although the contract on its face provided for actual delivery, it was not so intended by the parties, but that same was a gambling contract prohibited by the statute, etc., and offered evidence tending to show that the contract was negotiated by plaintiffs' agents, and it was understood between them at the time that no actual delivery was intended or should be required, etc.

Issues were submitted and responded to by the jury as follows:

1. Did the plaintiff and defendant enter into the contract as alleged in the complaint? Answer: Yes.

2. Was the plaintiff at all times able, ready, and willing to accept and receive and pay for said cotton upon its delivery during the time and at the place mentioned therein? Answer: Yes.

3. Was the said contract illegal and void? Answer: No.

4. If not, what damage is plaintiff entitled to recover? Answer: 29,454 pounds at 4½ cents per pound, with interest at 6 per cent until paid from 1 December, 1909.

Judgment on the verdict, and defendant excepted and appealed, assigning errors, etc.

*F. S. Spruill and H. A. Gilliam for plaintiff.*

*T. D. Warren, Aycock & Winston, and P. M. Pearsall for defendants.*

HOKE, J. The defendant moved to nonsuit, contending that the contract on its face is a gaming contract avoided by the statute, and this because it contains definite provision for an adjustment of damages on failure to deliver. But the question has been resolved against defendant in *Harvey v. Pettaway, ante,* page 375, holding that this and other stipulations of similar import, appearing in the contract, are not conclusive as a matter of law. It was also insisted that the court below erred in charging the jury, as he did, on the third issue as follows: "Upon this issue the jury is instructed that whether or not such contract is illegal and void is to be settled from the evidence in the case by ascertaining the real underlying intention of both parties to the contract, and the inquiries are to be directed to the question as to whether it was the intention of both parties to the contract that the cotton described therein should not be delivered, and whether it was the purpose and intent of both parties to conceal in the terms of the written contract a gambling deal in which the parties to the contract contemplated no real transaction as to the articles to be delivered," the objection being that if either party had the intent and purpose not to deliver, though uncommunicated to the other, the contract was prohibited by the statute. Defendant also tendered an issue presenting this view, which was rejected.

It is true that in order to a valid agreement the minds of the parties must have met on the same thing at one and at the same time; but this is said in reference to the common

intent as contained and expressed in the communications had between them. This may be by words, written or unwritten, or by conduct, both or 'either; but it must be in some way expressed, or it does not bind, and the position may not be allowed that when the parties have made an agreement for valuable consideration, clearly expressing their common intent and purpose in one way, this can be frustrated or altered by the secret and undisclosed intent of one of the parties to the contrary. This is true on. general principles (*Williams v. Carr*, 80 N. C., 294; Anson on Contracts, pp. 2, 3, and 4; Clark on Contracts, pp. 2 and 3), and on the facts of this case both the statute in question and authoritative interpretation of this and similar enactments here and elsewhere are against defendant's position.

Section 1689, Revisal, being the law by which contracts in futures are declared to be unlawful, provides in part: "That every contract, whether in writing or otherwise, whereby any person shall agree to sell and deliver cotton, corn, wheat, rye, bacon, salt, etc., at a place and time specified and agreed upon therein," to any other person, etc., when in fact and notwithstanding the terms expressed of such contract, it is *not intended by the parties thereto* that the articles or things so agreed to be sold and delivered shall be actually delivered or the value thereof paid, *"but it is intended* and *understood* by *them* that money or other thing of value shall be paid to the one by the other or to a third party, dependent on whether the market price or value of the thing shall be greater or less at the time and place, etc., . . . shall be utterly null and void." It will be noted that the statute avoids the contract when the vitiating purpose is held by the *"parties thereto,"* and further, "but it is intended and understood by them" that settlement may be had by paying the difference according to the rise or fall of the market or other change in value; and this view has prevailed in the different cases with us construing the law. *Harvey v. Pettaway, supra; Edgerton v. Edgerton,* 153 N. C., 167; *Burns v. Tomlinson,* 147 N. C., 645; *Rankin v. Mitchem,* 141 N. C., 277; *S. v. McGinnis,* 138 N. C., 724; *S. v. Clayton,* 138 N. C., 732; and authori-

tative decisions elsewhere are to the same effect: *Crawford v. Spencer,* 92 Mo., 498; *Scanlon v. Warren,* 169 Ill., 142; *Wall v. Schneider,* 59 Wis., 352; Clark on Contracts, p. 331.

In *S. v. Clayton, supra,* it was held: "The test of the validity of a contract for 'futures' which Laws 1889, ch. 221, requires is the 'intention not to actually deliver' the articles bought or sold for future delivery. No matter how explicit the words in any contract which may require a delivery, if in fact there is no intention to deliver, but the real understanding is that on the stipulated date the losing party shall pay to the other the difference between the market price and the contract price, this is a gambling contract, and void at common law and indictable under the statute."

In *Rankin's case, Associate Justice Brown,* for the Court, said: "That being so, the matter is to be settled by ascertaining the real underlying intention of the parties to the contract. Was it the intention of both parties to the contract that the cotton should not be delivered? Was it their purpose to conceal in the terms of a fair contract a gambling deal, in which the parties contemplate no real transaction as to the article to be delivered? This purpose and underlying intent his Honor properly left to the jury, the contract not being a gambling one on its face."

Undoubtedly, if it was understood by both that either party to the contract could be relieved by paying the difference, and that no actual compliance was intended at the time, this would avoid the contract; the language of the statute being that the contract is utterly void if there was no intent "that the thing should be actually delivered or the value thereof paid." It is in this sense that the Court said in *Burns v. Tomlinson,* 147 N. C., 645, "that a lawful contract was one where actual delivery was intended by both parties"—a correct statement of the burden placed on plaintiff by section 1691 of the statute, whenever the same applies. But it was never held in this case, or any other with us, that when an innocent party had made a contract valid in its terms, his rights acquired thereunder should be denied him by reason

of an undisclosed purpose or intent of the other.  To avoid the contract the vitiating purpose or understanding must be shared in by both.

The cases apparently holding a contrary view, to which we were cited by counsel, *McGrew v. City Produce Ex.,* 85 Tenn., 572, and *Connor v. Black,* 119 Mo., 126, were on statutes differing from ours and permitting or requiring perhaps a different interpretation.  Thus the Tennessee statute in express terms condemns the contract "if *either* of the contracting parties dealing simply for the margin or on the prospective rise and fall of prices, had no intention or purpose of making actual delivery."  And the Missouri statute of similar import received like construction and seems to have been enacted just after the decision from that State which we have cited in support of our conclusion.

It was further urged for error that the court, after imposing upon the plaintiff the burden of proving the contract a lawful one as required by chapter 36, sec. 1691 of the Revisal, in a subsequent part of the charge changed this ruling by placing the burden on defendant of showing it to be unlawful.  On a perusal of the charge of his Honor, we doubt if it is subject to this criticism, but assuming that defendant's position concerning the charge is correct, we are of opinion that there is no error committed to defendant's prejudice, and this by reason of certain qualifying words appearing elsewhere in the chapter, as follows:  "This section shall not be construed so as to apply to any person, firm, corporation, or his or their agent, engaged in the business of manufacturing or wholesale merchandising in the purchase or sale of necessary commodities required in the ordinary course of their business."  These words now have place at the end of section 1689 of the same chapter, that defining and declaring what contracts of this kind shall be considered unlawful, and the Court has already held in *S. v. McGinnis* and *S. v. Clayton, supra,* that in so far as these qualifying words are considered in reference to that section, they are without significance. In answer to the suggestion made in the *McGinnis case,* that this statute gave manufacturers and wholesale merchants the

right to "hedge" by purchasing "future contracts" for raw commodities without intending to demand "actual delivery," the *Chief Justice* said in *McGinnis's case* that the words referred to had no such meaning, but were inserted "unnecessarily and out of abundance of caution." And further, that "Section 7 does not confer any exclusive right or privilege upon manufacturers or wholesale merchants. It does not authorize them to engage in any business prohibited by the act of 1889. It does not authorize them to speculate in cotton or other commodities. It simply provides that the courts shall not construe the act of 1905 to have the effect of preventing them from buying and selling for future delivery the necessary commodities required in their ordinary business." And in *Clayton's case* he further said: "It is this class of *bona fide* contracts, in aid of business and not for gambling purposes, that section 7, chapter 238, Laws of 1905, was intended to authorize. That section did not authorize, nor can it be construed to intend to authorize, manufacturers and wholesale merchants to gamble by buying commodities for future delivery when there was no intention to deliver."

To allow to this proviso the meaning which the words, used ordinarily, import, and as affecting the body of the section where it now has place, would cause a direct conflict with section 3823 of the Revisal, by which contracts, of the very kind described in section 1689, are made criminal, and without qualifying words of any description. Accordingly, in *McGinnis's case,* it is suggested that the clause in question should probably be annexed to section 1691 of the chapter, that in reference to the burden of proof, and on full consideration we hold this to be the proper construction. It is a well recognized principle that in construing a statute, "In order to determine the true intent of the Legislature, the particular clauses and phrases should not be studied as detached and isolated expressions, but the whole and every part of the statute must be considered in fixing the meaning of any of its parts." Black on Interpretation of Laws, sec. 74, p. 166. A principle especially insistent in case of legislation *"in*

156—25

*pari materia"* and directly applied to our Revisal in *S. v. Lewis,* 142 N. C., 626, and other decisions of like import. Having reference to this general principle, it is also well understood that a statute should be so construed as to make it "harmonize with the existent body of the law, unless the legislative intent is clearly expressed to the contrary, and that each and every clause shall be allowed significance if this can be done by any fair and reasonable interpretation." Black Interpretation of Laws, p. 60, secs. 32 and 49; Lewis's Sutherland Statutory Construction, sec. 516.

It is also held that where laws have been codified, and in case of ambiguity or doubt, permitting construction, it is allowed that the court may examine the original legislation, as an aid to a correct interpretation. Lewis's Sutherland, sec. 450.

On examination of the original statute, it appears that the act, defining and declaring contracts of the kind in question unlawful, was passed in 1889, chapter 221. In 1905, chapter 538, the Legislature enacted a law to suppress what is known, in popular phrase, as "bucket shops," and, having provided for this in sections 1 and 2, the statute contains several additional sections, relating to the statute of 1889 and all of them having reference to the mode or quantum of proof which should be required in enforcement of that act. The Law of 1905 then, in its closing section, provided: "That this act shall not be construed so as to apply to any person, firm, or corporation, etc." This is the first time the words we are considering appear in our legislation on this subject, and, so far as they had reference to the law of 1889, it is clear that the Legislature, in the original statutes, only intended that they should affect questions of proof.

From these considerations, we are of opinion, as stated, that the proviso at the end of section 1689 of the Revisal, by correct interpretation, should appear, and only affect section 1691, that relating to the burden of proof; and giving the words this effect and placing, there has been no error committed which gives defendant any just ground of complaint.

On the undisputed facts, it appears that plaintiffs are dealers in spot cotton; that they buy from two to three hundred

thousand bales of cotton each year, supplying in the ordinary course of their business other dealers in Baltimore, New York, Boston, and various cotton mills in different sections of the country. Under and by virtue of the words in question, plaintiff's case is therefore withdrawn from the operation of section 1691, and he is entitled to have his cause tried under the rule which generally prevails, "that one who asserts that an ordinary business contract is unlawful is required to prove it to the satisfaction of the jury by the greater weight of evidence."

Defendant objected, further, that his Honor, on the issue as to damages, allowed the jury to award same on the basis of the highest market price of cotton between 10 September and 1 December, as provided by the contract. It is a general trend of court decisions to hold that, when "a contract is for a matter of certain value or value easily ascertainable" (Clark on Contracts, p. 412), or, as stated by another author, "Where damages can be easily and precisely determined by a definite pecuniary standard, as by proof of market values" (Hale on Damages, p. 137), that any sum stipulated for in the contract in excess of that value should be considered as a penalty, and especially is this true when the stipulated sum would necessitate an exorbitant recovery or one greatly disproportioned to the loss. But on perusal of his Honor's charge, we do not find that such an exception is open to defendant. The court seems to have submitted the question of damages under the rule which ordinarily obtains, that is, to be admeasured on the difference between the market contract price at the time and place of delivery. *Hosiery Co. v. Cotton Co.*, 140 N. C., 452. The damages were no doubt awarded on that basis, and the plaintiff does not appeal. The question, therefore, is not presented, and on the facts in evidence we make no decision upon it. There is no reversible error disclosed in the record, and the judgment for plaintiff is affirmed.

No error.

WALKER, J., concurring in result: In *Sprunt v. May, post,* 388, I filed a dissenting opinion, stating my views as to the Laws of 1889, ch. 221, and Laws of 1905, ch. 538, forbidding

dealings in "futures" and the conduct and maintenance of bucket shops. For the reasons therein given, I dissent from so much of the opinion of the Court in this case as is in conflict therewith, and assent to the conclusion that there was no error in the trial below, as the plaintiff is excepted from the operation of Revisal, sec. 1689.

BROWN, J., concurring: I concur generally in the opinion of the Court, but will state my view as to the effect of the last sentence in section 1689 of the Revisal upon wholesale dealers. I am of opinion that they are exempted entirely from the effect and operation of the act of the General Assembly embraced in chapter 36, Revisal, sections 1687 to 1691, inclusive. The validity of contracts for future delivery entered into with such dealers are to be determined according to the principles of the common law just as if no such legislation had ever been enacted.