EURE et al. v. SABISTON.

(Circuit Court of Appeals, Fourth Circuit. April 12, 1912.)

No. 1,066.

1. GAMING (§ 49*)—ACTION BY BUYER FOR BREACH OF CONTRACT—DEFENSE OF
ILLEGALITY—NORTH CAROLINA STATUTE.

Revisal N. C. 1905, § 1689, makes gaming contracts for future delivery of stock or commodities void, but also contains a provision that "this section shall not be construed so as to apply to any person, firm, corporation or his or their agent, engaged in the business of manufacturing or wholesale merchandising in the purchase or sale of the necessary commodities required in the ordinary course of their business." As the statute is construed by the Supreme Court of the state, such provision properly belongs in and applies only to section 1691, which places the burden of proof on the plaintiff in an action where the statute is pleaded as a defense and is intended to exempt manufacturers and bona fide dealers, suing on contracts which are fair and valid on their face from such burden. Held that, in such an action on a contract for future delivery of cotton, plaintiffs were entitled to have the question whether they were wholesale dealers in cotton as a commodity and required such cotton in the ordinary course of their business submitted to the jury with proper instructions as to the effect of an affirmative finding thereon.

[Ed. Note.—For other cases, see Gaming, Cent. Dig. §§ 100–102; Dec. Dig. § 49.*]

2. SALES (§ 418*)—BREACH OF CONTRACT OF SALE—MEASURE OF DAMAGES.

In an action for breach of a contract by which defendant agreed to deliver to plaintiffs "fifty bales of cotton, * * * which said party is now growing in Onslow county," plaintiffs are limited to the recovery of such damages as they may have sustained by reason of defendant's failure to deliver such cotton as he was growing in Onslow county at the time the contract was made.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1174–1201; Dec. Dig. § 418.*]

In Error to the Circuit Court of the United States for the Eastern District of North Carolina, at New Bern.

Action at law by M. L. Eure and S. W. Harris, trading as Eure, Harris & Co., against E. W. Sabiston. Judgment for defendant, and plaintiffs bring error. Reversed.

Larry I. Moore (Moore & Dunn, on the briefs), for plaintiffs in error.

Charles B. Aycock and Thomas D. Warren (Aycock & Winston, Duffy & Koonce, and P. M. Pearsall, on the briefs), for defendant in error.

Before PRITCHARD, Circuit Judge, and DAYTON and ROSE, District Judges.

PRITCHARD, Circuit Judge. This is an action at law instituted for breach of contract in the Circuit Court of the United States for the Eastern District of North Carolina in which the plaintiff below seeks to recover damages from the defendant below for failure to deliver 275 bales of cotton, of the average weight of 500 pounds, as

.set out in the 5 contracts sued upon. Among other things, these contracts contain the following language:

"* * * That he will deliver to party of the second part seventy-five bales of cotton at Jacksonville depot, which said party is growing in Onslow county and shall be delivered as fast as picked and baled and shall be good white cotton free from sand and dust and in merchantable bales of five hundred pounds (500) average weight."

The defendant filed a verified answer alleging specifically that the cause of action is in fact based upon wagering or gaming contracts and such as are made void by section 1689 of the Revisal of North Carolina. Eight issues were submitted to the jury, five of which relate to the question as to whether the defendant executed the contracts upon which this suit was instituted. The defendant having admitted the execution of the same, the court very properly directed the jury to answer these issues in the affirmative. The sixth, seventh, and eighth issues are in the following language:

"If so, did the defendant deliver said cotton, or any part thereof? Answer: No.

"Was it intended and understood by the plaintiffs, Eure. Harris & Company, and defendant E. W. Sabiston, at the time the contracts attached to the complaints were executed, that the cotton agreed to be sold and delivered should not be actually delivered, or the price stipulated paid therefor, but that an amount of money equal to the difference in the price of the cotton agreed to be paid and the market price at Jacksonville, N. C., on the day upon which said cotton was to be delivered, was to be paid and received in discharge of said contract? Answer: Yes.

"What damage, if any, is plaintiff entitled to recover. Answer: ———."

These issues were found in favor of the defendant, judgment was entered in favor of the defendant, and the case now comes to this court on a writ of error sued out by the plaintiff.

[1] There are a number of assignments of error, but we only deem it necessary to consider No. 11, which relates to the refusal of the lower court to submit to the jury the eleventh issue tendered by the plaintiff, which is in the following language:

"Were the plaintiffs at the time of making such contracts wholesale dealers in the purchase and sale of cotton as a commodity and such cotton required in the ordinary course of their business?"

It is insisted by the plaintiffs that they purchased cotton as a commodity and sold it to manufacturers and exporters and dealt in actual spot cotton, and that in no sense were they dealers in futures. However, the defendant sought to defend the same under section 1689 of the Revisal of North Carolina, which is in the following language:

"Every contract whether in writing or not whereby any person shall agree to sell and deliver any cotton, Indian corn, wheat, rye, oats, tobacco, meal, lard, bacon, salt pork, salt fish, beef, cattle, sugar, coffee, stocks, bonds, and choses in action, at a place and at a time specified and agreed upon therein, to any other person whether the person to whom such article is agreed to be sold and delivered shall be a party to such contract or not when, in fact, and notwithstanding the terms expressed of such contract, it is not intended by the parties thereto that the articles or things so agreed to be sold and delivered shall be actually delivered, or the value thereof paid, but it is intended and understood by them that the money or other thing of value shall be paid to the one party by the other, or to a third party, the party to whom such payment of money or thing of value shall be made to depend, and the

amount of such money or other thing of value so to be paid to depend upon whether the market price or value of the article so agreed to be sold and delivered is greater or less at the time and place so specified than the price stipulated to be paid and received for the articles so to be sold and delivered; and every contract commonly called 'futures' as to the several articles and things hereinbefore specified, or any of them, by whatever other name called, and every contract as to the said several articles and things, or any of them, whereby the parties thereto contemplate and intend no real transaction as to the article or thing agreed to be delivered, but only the payment of a sum of money or other thing of value, such payment and the amount thereof and the person to whom the same is to be paid to depend on whether or not the market price or value is greater or less than the price so agreed to be paid for the said article or thing at the time and place specified in such contract, shall be utterly null and void; and no action shall be maintained in any court to enforce any such contract, whether the same was made in or out of the state, or partly in and partly out of this state, and whether made by the parties thereto by themselves or by or through their agents, immediately or mediately; nor shall any party to any such contract, or any agent of any such party, directly or remotely connected with any such contract in any way whatever have or maintain any action or cause of action on account of any money or other thing of value paid or advanced or hypothecated by him or them in connection with or on account of such contract and agency. This section shall not be construed so as to apply to any person, firm, corporation or his or their agent engaged in the business of manufacturing or wholesale merchandising in the purchase or sale of the necessary commodities required in the ordinary course of their business."

The last sentence of the foregoing section provides that the statute shall not apply to any person, firm, corporation, etc., engaged in the business of manufacturing or wholesale merchandising in the purchase and sale of the necessary commodities required in the ordinary course of business. The issue which the lower court refused to submit, and upon which this assignment of error is based, was tendered with a view of ascertaining whether or not the plaintiffs came within the exception of the statute which we have just quoted. This statute has been passed upon by the Supreme Court of North Carolina in the case of State v. McGinnis, 138 N. C. 724, 51 S. E. 50. Chief Justice Clark, who wrote the opinion of the court in this case, among other things, said:

"Section 7 does not confer any exclusive right or privilege upon manufacturers or wholesale merchants. It does not authorize them to engage in any business prohibited by the act of 1889. It does not authorize them to speculate in cotton or other commodities. It simply provides that the courts shall not construe the act of 1905 to have the effect of preventing them from buying and selling for future delivery the necessary commodities required in their ordinary business."

However, the point involved in this assignment of error was not passed upon by the Supreme Court of North Carolina prior to the case of Alexander Sprunt & Sons v. May, 156 N. C. 388, 72 S. E. 821, decided at the November term, 1911, of that court. In disposing of this point, Judge Hoke, speaking for the court, said:

"* * * We have held in Rodgers, McCabe & Co. v. Bell [156 N. C. 378] 72 S. E. 817, at the present term, in reference to our statute as to gaming contracts (Revisal of 1905, c. 36), that the words now appearing at the end of section 1689, to wit, 'this section shall not be construed so as to apply to any person, firm, corporation or his or their agent, engaged in the business of manufacturing or wholesale merchandising, in the purchase or sale of the

necessary commodities required in the ordinary course of their business,' by correct construction should appear and only affect section 1691 of said chapter, the section relating to the burden of proof, and that, by reason of this clause, so placed, a bona fide wholesale dealer in spot cotton, who purchased the same, in the ordinary course of his business, is not affected by said section, but is entitled to have his cause tried and determined under the rule which generally obtains, that one who asserts that 'an ordinary business contract, valid on its face, is unlawful, is required to prove it by the greater weight of the evidence.' On the facts in evidence it appears that plaintiffs and their predecessors, under the style of 'Alex. Sprunt & Sons,' from 1866 have been engaged in the cotton business, and since 1880 they have exported cotton in large quantities, supplying mills and dealers abroad, and, in the ordinary course of their business, they buy annually on an average of 400,000 bales of cotton. They are therefore, if this evidence is accepted by the jury, well within the clause withdrawing their case from the provision of section 1691, and on another trial the same will be submitted under the ordinary rules of evidence obtaining in such cases."

The decision in the foregoing case had not been announced at the time the court below disposed of the case at bar. Under the circumstances of this case, and inasmuch as there was evidence offered by the plaintiffs tending to show that they were wholesale dealers in cotton as a commodity and that they purchased cotton as a commodity and sold it to manufacturers and exporters, and dealt in actual spot cotton and were in no wise dealers in futures, we are of the opinion that the refusal of the lower court to submit this issue to the jury was prejudicial to the rights of the plaintiffs. In view of the provisions of this statute, as well as the decision of the Supreme Court of North Carolina in the case of Alexander Sprunt & Sons v. May, supra, we are of the opinion that the court below erred in refusing to grant the issue embraced in the eleventh assignment of error.

[2] There is one other point which we think should be determined at this time. The contract sued upon, among other things, provides:

" * * * Party of the first part will deliver to the party of the second part fifty bales of cotton at Jacksonville depot, which said party is now growing in Onslow county."

Under this contract, we think that plaintiffs, if entitled to recover at all, are limited to recovering such damages as they may have suffered by the failure of the defendant to deliver such cotton as he was at the time the contracts were made growing in Onslow county. The defendant may properly be held to have been growing any cotton which he was growing on his own home or hired farm, or which was at that time being grown for him by his tenants or anybody else who, under contract or arrangement with him, was actually raising the cotton for him. Inasmuch as the case goes back for a new trial, we deem it proper to decide this point so as to speed the litigation as much as possible.

For the reasons hereinbefore stated, the judgment of the lower court is reversed, and the case is remanded, with instructions to the lower court to grant a new trial and for further proceedings in accordance with the views herein expressed.

Reversed.